## C. G. GANTLING, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where two counts in an indictment relate to the same transaction, and are only meant to meet various aspects in which the evidence may present itself, the court commits no error in refusing to compel the solicitor, before any evidence is offered, to elect between the counts, or to designate the count upon which he intends to rely for conviction.

2. Evidence of circumstances tending to connect the accused with the commission of the alleged crime, even though inconclusive, is properly admitted.

3. A non-expert witness may testify to the fact of stains upon clothing found upon the body of a deceased person, and may state the color of those stains, these being matters of common knowledge and common observation.

4. An objection to evidence, that it is "clearly inadmissible according to law," is properly overruled because of its generality.

5. Where it is shown that a confession was freely and voluntarily made, and that no improper influences were exerted to induce it, evidence of such confession is properly admitted.

6. Under the legal maxim *falsus in uno, falsus in omnibus*, a jury *may* disregard the entire testimony of a witness where such witness has wilfully and knowingly or corruptly sworn falsely to a material fact in the case, but they are not required to do so, neither does the law attach any such condition or qualification to the rule as prevents its operation in cases where the false witness is corroborated by some circumstances proven, or by the testimony of some other credible witness in the case.

7. The court may properly advise the jury that they *may* disregard the entire testimony of a witness where such witness has wilfully and knowingly or corruptly sworn falsely to a material fact in the case, and in determining whether they will disregard it, or what weight they shall give to it, they may take into consideration the fact that such witness is or is not corroborated by other credible evidence in the case

8. The court may properly advise the jury that they have a right

to reject the testimony of any witness whose general reputation for truth and veracity has been proven to be bad, and that in determining whether they will disregard it, or what weight they shall give to it, they may take into consideration the fact that such witness is or is not corroborated by other credible evidence in the case.

9. Courts have no right to qualify the rule requiring the guilt of an accused to be proven beyond reasonable doubt, or to disparage it in the estimation of juries by giving immediately after and in connection with a charge upon this subject an instruction to the effect that "the humane provision of the law is designed to protect innocent persons who are wrongfully charged with the commission of crime from being unjustly convicted, and is not designed to enable persons to escape punishment who are guilty of the commission of crime if they are shown to be guilty by the evidence."

10. The jury determines the credence which shall be attached to a confession given in evidence, and of every part thereof; they should give it a fair and unprejudiced consideration. The confession should be taken as a whole; the time and circumstances of its making, its harmony or inconsistency in itself or with the other evidence in the case; the motives which may have operated on the defendant in making it, should all be fairly considered by the jury, and then they should give effect to such parts as they find sufficient reason to credit, and reject all that they find sufficient reason to reject, but they should not give effect to or reject any part arbitrarily or capriciously.

11. An instruction "that circumstantial evidence is not only legal evidence, but also that a well connected train of circumstances is as conclusive of a fact as is the greatest array of positive evidence," in connection with further instructions to the effect that where a conviction of guilt depends upon circumstantial evidence alone, the circumstances proven should not only all concur to show that defendant committed the crime, but that they are all inconsistent with any other rational conclusion, and that circumstances when alone relied upon for a conviction should to a moral certainty actually exclude every hypothesis but the one to be proved, is not erroneous.

12. An instruction upon the facts or as to the weight and sufficiency of evidence is properly refused.

C. G. Gantling v. State of Florida—Statement of Case.

Writ of Error to the Circuit Court for Hamilton county.

*Statement.*

At a special term of the Circuit Court of Hamilton county, held in October, 1896, plaintiff in error was indicted for the murder of one Lilly Gantling, alleged to have been committed August 1, 1896. The indictment contained two counts: the first charging that the murder was effected with a razor; the second that it was committed in a manner and by means unknown to the grand jury. The defendant was tried and convicted of murder in the first degree at the Fall term, 1897, of said court, and from the death sentence imposed upon him, sued out this writ of error.

The conviction was based upon circumstantial evidence supplemented by proof of defendant's extra-judicial confessions. There was evidence tending to show the following facts: On and prior to August 1, 1896, the defendant kept a restaurant in Jasper, and also ran a hack and buggies for the public; his children were waiters in the restaurant, among whom was Lilly Gantling, a daughter about fifteen years of age; she disappeared in the latter part of July or first part of August, 1896, although very few people observed it, and defendant made slight efforts, if any, to ascertain her whereabouts. Between midnight and day in the latter part of a week in the first part of August, 1896, two men and a girl was seen going down the road in the direction of a bay or pond northwest of, but near, Jasper; the girl was "hollering and going on, and jumped off and looked like she ran;" one of the men spoke to her and said "come back here to me, didn't I tell you not to go another step further that way?" The girl seemed to be crying and the parties passed on down the road. Later

in the night other "hollering" was heard down in the bay—impressing the witness who heard it that there was a death down there that night—the hollering down in the bay sounded like a girl, not a woman; on the first Saturday night after the first Monday in August, 1896, between one and two o'clock a woman's voice was heard by persons in Jasper crying as if in great distress, "Oh Lordy," "Oh Lordy;" and a few moments afterwards it was repeated. At about three o'clock a vehicle was heard going in the direction of defendant's house, and when it reached his house defendant's voice was recognized calling "Ira," "Ira," to one of his sons. The woman's screams were in a direction northwest of Jasper and the vehicle came from that direction. On Sunday morning about the first of October, 1896, between eight and nine o'clock the remains of a colored female were found about twenty yards from the edge of a swamp or bay located near Jasper in a northwesterly direction. The body was badly decomposed, but from the clothing and certain peculiarities of the hair, forehead and teeth, it was identified as the body of Lilly Gantling. The body was covered when first-found. The defendant and his wife at the request of the coroner's jury went down and viewed the remains, but neither seemed to recognize them. There was also evidence tending to show that when Lilly Gantling disappeared she was apparently three or four months advanced in pregnancy; also conflicting evidence as to whether defendant ever made any inquiries or searches for his daughter, either before or after his arrest, which occurred within a few days after the body was found. There was also evidence tending to show that defendant confessed to two persons at different times on the afternoon of the day the body was found that he had been intimate with his daughter Lilly; that she became pregnant; that he killed her because

C. G. Gantling v. State of Florida—Statement of Case.

he had to do so in order to "keep in with the Masons." One of these persons testified that defendant told him "Dellage held her hands and I cut her throat." There was also evidence tending to show that defendant asked a prisoner in the jail with him, who was about to be liberated on bond, to go to Georgia and write defendant a letter "saying that you are my daughter, Lilly Gantling, and it will do me lots of good in my case."

The court charged the jury, among other things, as follows: 1. [When you are satisfied that a witness has wilfully sworn falsely to a material matter or fact in the case, then you may disregard the entire evidence of such witness, unless the evidence of such witness is corroborated by circumstances proven, or by the testimony of some other credible witness.] 2. The general reputation of a man for truth and veracity is what his neighbors generally say concerning him about his veracity [when a witness' general reputation for truth and veracity is thus shown to be bad, you may disregard the evidence of such witness from your consideration, unless the evidence of such witness is corroborated by some circumstances proven, or by the evidence of some witness who is truthful. What one or two neighbors alone say as to veracity does not constitute the general reputation of such witness for truth and veracity, where such witness had numerous neighbors.] 3. On the trial of persons charged with the commission of murder in the first degree, if the jury find such person guilty of any offense whatever, they in their verdict are required to state the degree of homicide of which they find such person guilty; where on being arraigned has plead not guilty, as in the case at bar, and such person is on trial for the alleged offense, [to justify a verdict of guilty of any offense, the minds of the jurors trying such case should be satisfied of the guilt of the accused from the

evidence beyond a reasonable doubt, or they should find a verdict of not guilty. The humane provision of the law is designed to protect innocent persons who are wrongfully charged with the commission of crime, from being unjustly convicted, and is not designed to enable persons to escape punishment who are guilty of the commission of crime, if they are shown to be guilty by the evidence.] 4. [To justify you in finding a verdict of guilty of murder in the first degree you shall be satisfied from the evidence, under these instructions, of the following material facts, among others, first, that Lilly Gantling is dead; second, that the prisoner at the bar caused the death of said Lilly Gantling at the time and place alleged in the indictment, and in some way and manner, and by some means, instruments and deadly weapons unknown, unlawfully and from a premeditated design to effect the death of her, the said Lilly Gantling.] 5. You are instructed that the law in regard to admissions or confessions where such have been satisfactorily proven to have been made by a party charged with the commission of a crime, and to which such confessions and admissions relate, [that it is your duty to consider the whole statement, admission or confession proven to have been made, and that you may believe the whole to be true, or a part of it to be true and the balance of it untrue, or you may disbelieve the whole of the same. Where an admission or confession of guilt is proven to have been freely and voluntarily made by a person charged with the offense, who is of sound mind, then such admission or confession of guilt of the crime charged are to be received as evidence of guilt of such person] on the well known principle that it is not reasonable to presume that a person of sound mind would confess or admit a thing or things to be true that might or would imperil their safety, or be prejudicial to them

on a trial if such admission or confession was in fact false. 6. As to the evidence in the case at bar, which is circumstantial, you are instructed as matter of law that circumstantial evidence is legal evidence, [and are further instructed that it is well settled by decisions of various courts in this country, and especially by our own Supreme Court, "that circumstantial evidence is not only legal evidence, but also that a well connected train of circumstances is as conclusive of a fact as is the greatest array of positive evidence."] The value of this kind of evidence consists in the conclusive nature and tendency of the circumstances relied upon to establish any controverted facts; in criminal cases they must not only be consistent with guilt of the accused, but must be inconsistent with the innocence of the accused. Where a conviction of guilt depends upon circumstantial evidence alone, the circumstances proven should not only all concur to show that the prisoner committed the crime, but that they all are inconsistent with any other rational conclusion. And the circumstances proven should all connect, or tend to connect, the accused with the commission of the alleged crime, and the circumstances proven should be of such character as to satisfy the minds of the jurors trying the case of the guilt of the accused beyond a reasonable doubt; the circumstances from which the conclusion is drawn should be fully established. All the facts should be consistent with the hypothesis of guilt. The circumstances should be of conclusive nature and tendency, and the circumstances when alone relied upon for a conviction, should to a moral certainty actually exclude every hypothesis but the one to be proved."

For our own convenience we have numbered the above quoted portions of the charge, and those portions

embraced within [ ] were duly excepted to by defendant. Other facts are stated in the opinion.

*Mallory F. Horne*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

CARTER, J.:

I. After the jury was empanelled and sworn, but before any evidence was offered, the defendant moved the court to require the State Attorney to elect between the first and second counts of the indictment, and to designate the count upon which he intended to rely for a conviction. In overruling this motion the court committed no error, as both counts related to the same transaction, and were framed to meet various aspects in which the evidence might present itself. Murray v. State, 25 Fla. 528, 6 South. Rep. 498.

II. The remains of Lilly Gantling were discovered on Sunday. The coroner's jury was in session that day and also the following day, Monday, and many people went to and from the place where the remains were discovered on these days. The remains were found in a swamp or bay near Jasper, an isolated spot grown up with bushes and thick undergrowth. On Monday morning a piece of black oil-cloth, considerably worn and of unusual size, was discovered among the bushes in the bay near the remains, but further in the swamp. Between the oil-cloth and the remains several bushes were broken; the broken bushes extending from the cloth in the direction of and about half the distance to the remains. There was evidence tending to show that this oil-cloth belonged to defendant, and that he had frequently used it in connection with the operation of his public conveyances. The defendant objected to evidence concerning the broken bushes and the oil-cloth

on the ground that same was irrelevant, and because the persons testifying about the oil-cloth were not present when it was found.  As to the last ground of this objection there was evidence tending to show that although the witnesses were not present when the cloth was first discovered, yet they saw it before it had been moved; that around it the ground was dry, but underneath it the ground was damp when they first saw it.  We think this evidence was sufficient to admit their testimony.  As to the first ground of objection there was evidence tending to show that this oil-cloth was owned by defendant at the time his daughter disappeared; that on the night in August when distressing female screams were heard in the direction of this bay it was raining; and it is a matter of common knowledge that an oil-cloth is an article capable of use as a protection from rain.  We think the circumstance of its being found near the remains with indications by broken bushes of the passage of some animate object between the oil-cloth and the remains, while inconclusive, yet tended in some degree to connect the defendant with the crime charged, and was, therefore, admissible in evidence.  Reynolds v. State, 34 Fla. 175, 16 South. Rep. 78; Jenkins, McRae and Clinton v. State, 35 Fla. 737, 18 South. Rep. 182.

III. Jim Yates, a witness for the State, testified that he saw a part of the clothing found with the remains; that he saw splotches or stains of some kind about this clothing which he supposed was blood—he felt confident that it was blood.  The defendant objected to this latter statement as being a mere conclusion of the witness. The court ruled that unless the witness was an expert he could not testify that the stains were blood stains, but that he could give the color of the stains and the jury could draw its own conclusions.  The witness then stated that he was not an expert—that the stains were of

a yellow, or reddish color—they had been there so long that they were not the color of blood. The defendant then moved to strike out the entire testimony of this witness, on the ground that his testimony was expert testimony given by a non-expert witness. The court properly overruled this motion. All of this witness' testimony was not expert. It requires no expert knowledge to enable one to know that there are stains upon clothing, nor their color, where they are visible to the eye. These are matters open to common knowledge and common observation.

IV. It is insisted that the court erred in admitting evidence of defendant's alleged confession to the witness Dick Hill. The objections interposed were that "defendant was induced by a hope of betterment to talk to witness, and because the same was not perfectly free and voluntary, and was otherwise clearly inadmissible in evidence according to law." The last ground was so general, vague and indefinite that it demanded no serious consideration from the court. The court was justified in overruling it because of its generality. Carter v. Bennett, 4 Fla. 283; Gladden v. State, 12 Fla. 562; Withers, Admr. v. Sandlin, 36 Fla. 619, 18 South. Rep. 856. The other grounds of objection were properly overruled because there was no testimony whatever tending to show that this alleged confession was not perfectly free and voluntary, or that it was made in consequence of a "hope of betterment." On the contrary, Hill testified that defendant made this confession at his own home prior to his arrest; that he voluntarily began the conversation which led up to the confession by stating that trouble had come upon him, and he further testified that no inducements whatever were held out to defendant to procure the confession. Where it is shown that a confession was freely and voluntarily made, that no improper influ-

ences were exerted to induce it, the court commits no error in admitting evidence of such confession. Holland v. State, 39 Fla. 178, 22 South. Rep. 298, and authorities cited.

V. The court erred in giving that portion of the charge numbered 1. Under the legal maxim *falsus in uno, falsus in omnibus,* a jury may disregard the entire testimony of a witness where such witness has wilfully and knowingly or corruptly sworn falsely to a material fact in the case (Thompson on Trials, §§2423, 2424; 29 Am. & Eng. Ency. of Law, p. 780 *et seq.*), but they are not required to do so; neither does the law attach any such condition or qualification to the rules as prevents its operation in cases where the false witness is corroborated by some circumstances proven, or by the testimony of some other credible witness in the case. The court may properly advise the jury that they *may* disregard the entire evidence of such a witness, and that in determining whether they will disregard it, or what weight they shall give to it, they may take into consideration the fact that such witness is or is not corroborated by other credible evidence in the case. The instruction under consideration was calculated to impress the jury with the idea that the law would not permit them to discard the entire testimony of such a witness, where he was corroborated by some circumstances or another credible witness in the case, and it was, therefore, erroneous. Newberry v. State, 26 Fla. 334, 8 South. Rep. 445.

VI. For reasons similar to those mentioned in the preceding paragraph of this opinion, the court erred in giving that portion of the charge numbered 2 which was excepted to. It is for the jury to determine for themselves whether they believe the testimony of a witness whose general reputation for truth and veracity is

proven to be bad, and they have that right even though the impeached witness may be corroborated by circumstances proven, or by the testimony of other credible witnesses. The court may properly advise the jury that they have a right to reject the testimony of any witness whose general reputation has been proven to be bad; and that in determining whether they will disregard it, or what weight they shall give to it, they may take into consideration the fact that such witness is or is not corroborated by other credible evidence in the case. Thompson on Trials, §2426. The latter clause of this charge was not justified by any evidence in the record. There is nothing in the evidence showing that the witnesses sought to be impeached in this case had numerous neighbors, or that they had any neighbors other than those whose names were mentioned by the impeaching witnesses.

VII. The language embraced in that portion of the charge numbered 3, to the effect that the humane provisions of the law were designed to protect innocent persons wrongfully charged with crime from being unjustly convicted, and not to enable guilty persons to escape punishment for crime if they were shown to be guilty by the evidence, following immediately after and in connection with the instruction as to reasonable doubt, was calculated to impress the jury with the idea that there was a qualification to the rule given them upon the subject of reasonable doubt, and that if they believed from the evidence that defendant was guilty, he was not entitled to the benefit of that rule. It is a positive legal right, appertaining to every accused person, whether guilty or innocent, that he shall not be condemned for a criminal offense in a judicial trial, until and unless the evidence produced against him shall be legally sufficient to prove his guilt beyond a reasonable

doubt. Although the jury may believe that the accused is guilty, and this belief may be justified by a preponderance of the evidence, they must, nevertheless, accord him the benefit of the legal presumption of innocence until that presumption is overcome by evidence showing guilt beyond a reasonable doubt. It matters not that the rule was designed in order to protect innocent persons; it is general in its operation, embracing every person *accused* of and on trial for a crime, and the courts have no right to qualify this rule or disparage it in the estimation of juries by instructing them that it was designed for the benefit of innocent and not guilty men. The object of the law is to furnish every man a fair and impartial trial, according to general and uniform rules; and in such trials and the application of its principles the law knows no distinction between the innocent and the guilty until the guilt of the latter has been ascertained by that *quantum* of evidence which satisfies beyond a reasonable doubt.

VIII. At the close of the evidence the State Attorney abandoned the first count of the indictment, and asked for a verdict upon the second count only. The charge numbered 4 was entirely correct as applied to the evidence under the second count of the indictment, except that the words "beyond a reasonable doubt" should have been substituted for the words "under these instructions."

IX. That portion of the charge numbered 5, excepted to tested by our previous decisions, was erroneous, because calculated to impress the jury with the idea that they could arbitrarily or capriciously accept or reject any part of a confession. In Metzger v. State, 18 Fla. 481, this court approved an instruction to the effect that confessions when made without any effort to obtain them, either from fear or promises of reward in

any manner, or when made freely, without inducement or threat, are strong evidence against a party when unexplained or not denied; but such an instruction could have no application to the facts of this case, because the defendant denied making the confessions sought to be proved against him. It is true that pertinent confessions when freely and voluntarily made are evidence tending to prove guilt, to be considered by the jury with all the other evidence given on the trial. The jury are to determine the credence which shall be attached to the confession and every part thereof; they are to give it a fair and unprejudiced consideration. The confession should be taken as a whole; the time and circumstances of its making, its harmony or inconsistency in itself, or with the other evidence in the case; the motives which may have operated on the party in making it, should all be fairly considered by the jury, and then they should give effect to such parts as they find sufficient reason to credit, and reject all that they find sufficient reason to reject; but they should not give effect to any part or reject any part arbitrarily or capriciously. This is the rule laid down by us in Marshall v. State, 32 Fla. 462, 14 South. Rep. 92, and tested by this rule the instruction under consideration was erroneous.

X. We perceive no error prejudicial to the defendant in that portion of the charge numbered 6. The entire instruction is in harmony with our previous decisions. Indeed, it states the rule somewhat stronger in favor of the accused than our previous decisions have gone, and perhaps stronger than the law requires, but the error in this, if any, is favorable to the accused and he is in no position to complain of it. Tested by the principles announced in Jenkins, McRae and Clinton v. State, 35 Fla. 737, 18 South. Rep. 182; Whetson v.

State, 31 Fla. 240, 12 South. Rep. 661; Kennedy v. State, 31 Fla. 428, 12 South. Rep. 858, and Whitfield v. State, 25 Fla. 289, 5 South. Rep. 805, it will be found that the instruction gave the defendant the full benefit of the law relating to the weight and sufficiency of circumstantial evidence, and that the part embraced in brackets, as to which particular exception is taken, was correct.

XI. The second instruction requested by the defendant was properly refused. Among other things it instructed the jury "you are charged that said pretended confessions are not corroborated by other circumstances sought to have been proven, or *vice versa*; that said circumstances do not corroborate the said alleged confession." A more glaring violation of the rule which prohibits the judge from charging on the facts, or as to the weight and sufficiency of the evidence, than that presented by this instruction can scarcely be imagined.

The other questions raised by the assignments of error will not necessarily arise upon another trial, and for that reason we do not consider them.

The judgment of the Circuit Court is reversed and a new trial granted.