### CELLOS HARRISON v. STATE OF FLORIDA

5 So. (2nd) 703                        En Banc

January 20, 1942

Ben F. Barnes, for appellant.

J. Tom Watson, Attorney General, Sidney L. Segall, Assistant Attorney General, and Woodrow M. Melvin, Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

On June 13, 1941, the appellant, Cellos Harrison, was indicted by a grand jury of Jackson County, Florida, for the murder of Jimmie Mayo on February 5, 1940. He was adjudged insolvent and Honorable Ben F. Barnes was by the court appointed to defend Harrison. The appellant, on June 23, 1941, was placed upon trial and the following day the jury rendered a verdict of murder in the first degree, without recomendation of mercy. The trial court overruled a motion for a new trial and sentenced the appellant to death by electrocution, and from this judgment an appeal has been perfected here.

The deceased, Jimmie Mayo, owned and operated a small store and filling station on the outskirts of Marianna on the road toward the Industrial School. On the morning of February 5, 1940, the wife of the deceased went to Marianna and shortly thereafter the deceased was found lying on the floor of his store with his head in a pool of blood and it was discovered he was suffering from a wound or blow on the head caused by a blunt instrument. He was rushed to a physician and was treated by him for a fractured skull. The deceased told the physician that a yellow

negro hit him and he died shortly thereafter. The defendant came to ·the deceased's store about every day to buy whiskey.

Several persons, inclusive of the appellant, were arrested and questioned concerning the crime, but each were discharged.

The motive for the crime was robbery. The appellant lived in the community where the deceased operated his store, and was frequently seen about the place of business and was there within an hour of the time when the crime was committed. The appellant asserted his innocence of the crime, but on May 19, 1941, as a result of a conference between the newly elected Sheriff and a State Investigator, the appellant was re-arrested and placed in jail at Marianna; was later transferred to the Gadsden County jail, and subsequently to the Leon County jail. While at Tallahassee he signed a confession, which was admitted into evidence over the objection of his counsel.

The confession is viz:

"Tallahassee, Florida May 30, 1941 2-47 P.M.

"Living Room of County Jail.

"Statement made to State Investigator, W. H. Gasque, presence of Sheriff W. B. Gause and deputy Sheriffs Cecil Gatlin, Porter Holland, and Jack Mac-Mullin.

"This statement by Cellos Harrison is made freely and voluntarily with no offer of reward or threatened in any way by any one, after being duly warned of his constitutional rights explaining that any statement he made would be used against him. He was also warned that he did not have to make a statement unless he wanted to.

" 'On the morning of February 5, 1940, I Cellos Harrison, went to Mr. Mayo's place about seven A.M. for the purpose of buying some liquor on arrival at the place I found Mr. and Mrs. Mayo. I had with me a jug and a carpenter's hammer. Mr. Mayo informed me that he was out of liquor but to leave my jug and come back after dark.

" 'Leaving the jug with Mr. Mayo I returned home.

" 'About eight-thirty or nine o'clock I went back to Mr. Mayo's carrying my hammer with me. On arrival there I found Mr. Mayo alone. I called for a package of cigarettes and as he turned to get them I struck him with the hammer at the back of the head; as he fell on the outside of the counter I struck him again with the hammer. I then turned and went behind the counter to where Mr. Mayo kept his money in a muffin pan. I carried the pan with the money into the bedroom, placing it on the bed and began putting the money in my pockets. In the excitement I left a little of the change on the bed. I secured for myself about thirty dollars (30) all silver except three or four dollars. On leaving the place I crossed the highway directly in front of the store into the woods and home.'

"Cellos Harrison

"Witness

"W. B. Gause
"Cecil C. Gatlin
"Porter Holland
"Jack McMullin Jr."

Objections to the admission into evidence of the purported confession were seasonably made, when the trial court excluded the jury and heard testimony as to the voluntariness thereof. There is no dispute in

the record as to the *corpus delicti* but the State's case must rest on the written confession. It was the view of the trial court that the confession was admissible. This Court, in Brown v. State, 135 Fla. 30, 184 So. 518, when considering the point here presented, said:

" '. . . When considering such a confession, however, trial courts should exercise great diligence to ascertain whether such questioning was so repeated and persistent and applied under such attending circumstances of intimidation or inequality between the interrogator and the accused as to impair the freedom of will of the latter and thereby amount to compulsion. The effect as well as the form of the compulsion should be carefully weighed and considered, for a confession obtained by compulsion must be excluded, whatever may have been the character of the compulsion. Ziang Sung Wan v. United States, 266 U. S. 1, 45 Sup. Ct. Rep. 1, 69 Law Ed. 131, decided October 13, 1925. . . .' See Deiterle v. State, 98 Fla. 739, 124 So. 47; Chambers v. State, 117 Fla. 642, 158 So. 153; Murray v. State, 25 Fla. 528, 6 So. 498; Sims v. State, 59 Fla. 38, 52 So. 198; Green v. State, 40 Fla. 474, 24 So. 537; Coffee v. State, 25 Fla. 501, 6 So. 493."

When the appellant was being taken from the court room to the jail by a deputy sheriff during the progress of the trial, the following occurred:

"Jack McMullin, a material witness for the State who had previously testified at this trial, was recalled for further examination and testified as follows:

"Direct Examination. By Mr. McRae: Q. Your name is Jack McMullian? A. Yes, sir. Q. You are a deputy sheriff of this county? A. Yes, sir. Q. Mr. McMullian, just recently have you had a conversation with this defendant? A. Yes, sir. Q. And what was this conversation? A. Do you mean the

last conversation I had? Q. Yes, sir. A. The last conversation I had was last Friday afternoon, I think it was. It was the last time he was arraigned. Going back to the jail I asked him why he changed his plea of guilty before to not guilty this time and he said he was guilty of hitting him but not guilty of premeditated design.

"Counsel for the defendant objected to any statement, or any question that leads to any statement that might relate to some former plea.

"By the Court: 'Gentlemen of the Jury, you will disregard all that has been said about my former plea in this case.'

"By Mr. McRae: Q. Make the statement again? A. He told me going to the jail that he was guilty of hitting Mr. Mayo but was not guilty of the premeditated part. That was after Mr. Barnes had been hired as his attorney.

"Cross Examination. By Mr. Barnes: Q. Where was this defendant when he made that statement? A. In the automobile. Q. On the highway? A. Yes, sir. Q. And you all were traveling back with him? A. Yes, sir. Q. Who was in the car with him? A. Myself and the sheriff and the negro. Just three of us. Q. You and Mr. Gause and the defendant? A. Yes, sir. Q. And he made that statement on the way back to the jail at Tallahassee? A. Yes, sir, I asked him out of curiosity why he changed it and that is what he told me." This witness then left the stand.

The record discloses that counsel for appellant seasonably objected to the testimony of the deputy having the appellant in custody when the damaging statement is alleged to have been made, and the trial court sustained the objection and immediately in-

structed the jury to disregard the statement. After the court had ruled, the State Attorney stated: Q. Make the statement again (which was directed to the deputy as a witness for the prosecution.) A. He told me (meaning the appellant) going to the jail that he was guilty of hitting Mr. Mayo, but was not guilty of premeditation. That was after Mr. Barnes had been hired as his attorney." The burden was on the prosecution, prior to admission into evidence of the admission or confession, to establish, in the absence of the jury and to the satisfaction of the trial court, that the same was freely and voluntarily made by the appellant and without hope, fear, reward, or duress.

In Clay v. State, 143 Fla. 203, 196 So. 462, the rule enunciated by this Court is viz:

"It is well established law that when it is shown a confession was freely and voluntarily made and that no improper influences were exerted or reward held out to obtain it, the confession is properly admitted into evidence. See Bennett v. State, 96 Fla. 237, 118 So. 18; Nickels v. State, 90 Fla. 659, 106 So. 479; Greene v. State, 40 Fla. 474, 24 So. 537; Browne v. State, 92 Fla. 690, 109 So. 811; Williams v. State, 48 Fla. 65, 37 So. 521; Davis v. State, 90 Fla. 317, 105 So. 843; Sims v. State, 59 Fla. 38, 52 So. 198; Gantling v. State, 40 Fla. 237, 23 So. 857; Holland v. State, 39 Fla. 178, 22 So. 298. It is likewise the law of Florida that if an alleged confession was not freely and voluntarily made, it is error to admit the same into evidence against the party making same. See Browne v. State, 92 Fla. 699, 109 So. 711; Davis v. State, 90 Fla. 317, 105 So. 843; Crawford v. State, 70 Fla. 323, 70 So. 374; Deiterle v. State, 98 Fla. 739, 124 So. 47."

The appellant is a 22 year old colored boy living in the community where Mr. Mayo was killed. He was

arrested, with others, but was discharged because of the lack of evidence. He continued to reside in the same community and was about fifteen months after the date of the crime re-arrested. He was placed in the jail at Marianna and certain ones conversed with him. He was without funds and an attorney was appointed to represent him. The deceased stated prior to his death that a "yellow negro" hit him. We have nothing in the record to show the shade of the appellant. He remained in the county jail of Jackson County and was then transferred to Quincy. The Investigator took appellant in a car from Marianna to Quincy to be identified by one of the State's witnesses. He was later transferred from Quincy to Tallahassee and the confession was obtained. The appellant was never placed on the stand; neither did he testify before the jury. It is true that he testified before the court when the voluntariness of the confession was being considered. What testimony, if any, exists that can or may be adduced favorable to the appellant does not appear in the record.

There can be no conviction in the case at bar without the confessions, *supra*. The case of Brown v. State, 135 Fla. 30, 184 So. 518, involved a confession similar to the one here presented. The trial court instructed that "all confessions should be acted upon with great caution." The exact language is viz:

" '. . . All confessions should be acted upon with great caution by courts and juries. The credibility of a confession is for the jury to determine. You are to determine the credence which should be attached to the alleged confession, every part thereof. It is your duty to give such confession a fair and unprejudiced consideration. The confession should be considered

as a whole. You should fairly consider the time and all the circumstances of its making, its harmony or inconsistency in itself or with the other evidence in the case, and the motives which may have operated on the jury in making it. You should give effect to such parts as you find sufficient reason to credit, and reject from your consideration all that you find sufficient reason to reject, but you should not give effect to any part or reject any part, arbitrarily or capriciously."

The rule expressed in Brown v. State, *supra,* followed previous decisions of this Court. See Harvey v. State, 129 Fla. 289, 176 So. 439. In the case of Daniels v. State, 57 Fla. 1, 48 So. 747, the same rule was followed, viz:

"Testimony as to confessions of guilt as distinguished from mere statement of other facts should be received in evidence on a trial with caution especially where the party is under arrest when the confession is made; and testimony as to confessions of guilt made to officers or when under arrest is not admissible in evidence at the trial unless it is clearly shown that the confession was voluntarily made after the party is fully advised of his rights under the law. See Green v. State, 40 Fla. 474, 24 South. Rep. 537; McNish v. State, 47 Fla. 69, 36 South. Rep. 176."

See Gantling v. State, 40 Fla. 237, 23 So. 857; Coffe v. State, 25 Fla. 501, 6 So. 493; Anthony v. State, 44 Fla. 1, 32 So. 318.

The rule in force in Florida to the effect that confessions should be considered and weighed by a jury with great caution, (and it is the duty of a trial court so to charge) is sustained by authors of high standing. See Wigmore on Evidence, Vol. 3 (3rd Ed.) par.

866, pp. 356-58; Underhill's Criminal Evidence, (4th Ed.) par. 286, pp. 571-73. The latter author cites Gantling v. State, and quotes from Coffee v. State, infra, viz: (text page 572) :

"Florida. Gantling v. State, 40 Fla. 237, 23 So. 857. 'It is a rule of law that the confessions of parties charged with crime should be acted upon by courts and juries with great caution. . . . The wisdom of this rule can not be questioned, for the reason that notwithstanding the confessions of persons accused of crime have been held to be evidence of the very highest character, upon the theory that no man would acknowledge that he had committed a grave crime unless he was actually guilty, but experience teaches that this theory is a fallacy, for it is a fact that numbers of persons have confessed that they were guilty of the most heinous crimes, for which they suffered the most horrible punishments and yet they were innocent. In the sixteenth and seventeenth centuries, in enlightened England, men and women confessed that they were guilty of witchcraft, communion with evil spirits and suffered at the stake therefore, and at this day men through fear of personal punishment, or through hope of averting such punishment, confess that they are guilty of crime, without the slightest foundation in truth for such confession, and for these reasons we say, that the theory that men will not confess to the commission of crimes of which they are innocent, is a fallacy.' Coffee v. State, 25 Fla. 501, 6 So. 493, 23 Am. St. 525.

"Jury should act on confession with great caution. Nickels v. State, 90 Fla. 659, 106 So. 479."

See also Greenleaf on Evidence, Vol. 1 (16th Ed.) par. 216, pp. 349-50; 22 C.J.S. par. 843, pp. 1479-80;

16 C.J. par. 1518, p. 738; Wharton's Criminal Evidence, Vol. 2 (11th Ed.) par. 644, pp. 1078-81.

It is asserted that the appellant failed or omitted to request the trial court to charge the jury upon the weight of confessions to be given by juries, and, having failed so to do during the progress of the trial or upon the completion of taking of the testimony, counsel for appellant can not, under the provisions of Subsection 4 of Section 215 of the Criminal Code, be heard on this contention. Section 215 (Chapter 19554, Acts of 1939, Laws of Florida) provides:

"Section 215. Charge to Jury. (1) The presiding judge shall charge the jury only upon the law of the case at the conclusion of the argument of counsel.

"(2) Every charge to a jury shall be orally delivered, and charges in capital cases shall also be in writing. Charges in other than capital cases shall be taken by the court reporter and transcribed by him and filed in the cause.

"(3) At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform the counsel of its proposed action upon the requests prior to their arguments to the jury.

"(4) No party may assign as error or grounds of appeal, the giving or the failure to give instruction, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

"(5) When an objection is made to the giving or failure to give an instruction, no exception need be made to the court's ruling thereon in order to have such ruling reviewed, and the grounds of objection for ruling thereon shall be taken by court reporter, transcribed by him, and filed in the cause."

Section 4363 C.G.L. makes it the statutory duty of the several trial courts of Florida in all cases at law and in all criminal prosecutions to charge the jury "upon the law of the case." Section 215 of the Criminal Code, *supra,* makes it the statutory duty of a trial court to charge the jury "upon the law of the case." "The law of the case" contemplated by Section 215 of the Criminal Code and Section 4363 C.G.L. includes the weight to be given by juries to confessions as enunciated by the several decisions and utterances of this Court. The conviction of the appellant here necessarily rests on the confession. The omitted charge, under the circumstances of the case at bar, was of tremendous interest to the appellant and is one safeguarded to him by the laws of Florida. It was the duty of the trial court under the circumstances of this case to so charge the jury, whether requested so to do by counsel or not. The omitted charge, as shown by the record in this case, was a part of "the law of the case" provided for in Section 4363 C.G.L. and Section 215 of the Criminal Code.

For the errors committed the judgment appealed from is hereby reversed and a new trial awarded.

BROWN, C. J., WHITFIELD, TERRELL, THOMAS and ADAMS, JJ., concur.

BUFORD, J., dissents.