## CELLOS HARRISON v. STATE OF FLORIDA

| | |
|---|---|
| 12 So. (2nd) 307 | January Term, 1943 |
| December 18, 1942 | En Banc |
| On Rehearing February 19, 1943 | |
| On Motion for Clarification March 16, 1943 | |

*Ben F. Barnes,* for appellant.

*J. Tom Watson,* Attorney General, and *Woodrow M. Melvin,* Assistant Attorney General, for appellee.

THOMAS, J.:

In obedience to a judgment of this Court, filed 20 January 1942, reversing the conviction of the appellant Cellos Harrison, the case was again tried and again he was found guilty of murder in the first degree and sentenced to death by electrocution. Most of the salient facts were detailed in that decision, Harrison v. State, 149 Fla. 365, 5 So. (2nd) 703, and the confession of the defendant was there given verbatim. There is litle need to repeat here all of the circumstances of

the foul murder of one Johnnie Mayo because, as developed in the second trial, they were substantially the same as in the first one.

The appellant and others were arrested immediately following the crime and were released. The following year he and an acquaintance, both suspects, were apprehended and the appellant was placed in the jail at Quincy, in an adjoining county, while the other prisoner was incarcerated at Marianna. This procedure of separating prisoners to prevent fabrication by them of consistent defenses is not unusual and has long been practiced.

Later, the appellant was removed to the jail at Tallahassee by the sheriff of Jackson County, one of his deputies and a special investigator in the employ of the State. In the course of this journey, a distance of about twenty-five miles, a conversation was held between the investigator and the defendant and upon arrival at the jail in Tallahassee the appellant made the confesion which was thereupon reduced to writing and signed by him.

The discussion in the former opinion centered largely on the law governing the introduction of this sort of evidence and the gist of the decision was that in a case where the life of the defendant was at stake and conviction could not, in all probability, be obtained in the absence of the confession it was the duty of the trial to charge the jury on that particular aspect of the testimony even though there was no request on the part of the accused to do so.

We retain the opinion, then expressed, that conviction would not have been possible without the admission of guilt by the defendant. We have scrutinized all of the testimony and particularly that part of it establishing the circumstances which surrounded the confession and its reduction to writing. The question of the failure of the court to give the charge is eliminated in this appeal because five distinct instructions on the subject, all of them requested by the defendant, were read to the jury and, indeed, the appellant now presents no challenge to the judgment upon any ground save the sufficiency of the evidence as a whole and the admissibility and credibility of the confession in particular.

Our examination has convinced us that the trial judge scrupulously observed the decisions of this court in determining the admissibility of the confession from an examination, in the absence of the jury, of the witnesses who were present when it was given and that he was thoroughly justified in his conclusion that it was free and voluntary. After announcing his ruling the witnesses whom he had heard were re-examined so that the jury could determine, not only from the evidence itself but from the manner in which it was obtained, how much credibility could be given it. Brown v. State, 135 Fla. 30, 184 So. 518.

It is our view that no abuse of discretion was shown by the judge in performing his function of passing upon the admissibility and we have found no reason to interfere with the verdict of the jury because they were justified in finding the defendant guilty if they believed the witnesses gave a truthful account of the obtaining of the confession. The paper itself, they stated, was dictated, read and signed by the appellant. It clearly described the manner in which he had felled the deceased by crushing his head with a hammer.

We are not disposed to interfere with the judgment and, therefore, it is—

Affirmed.

WHITFIELD, BUFORD, and ADAMS, JJ., concur.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., dissent.

ON REHEARING

PER CURIAM:

On December 18, 1942, we handed down a majority opinion prepared by Mr. Justice THOMAS and a dissenting opinion prepared by Mr. Justice CHAPMAN, Justices WHITFIELD, BUFORD and ADAMS concurred in the opinion by Mr. Justice THOMAS, while Justice TERRELL and Chief Justice BROWN concurred in the dissenting opinion by Mr. Justice CHAPMAN.

In due course, petition for rehearing was filed and on January 28th 1943, a majority of the Court concurred in the granting of a rehearing and ordered reconsideration of the cause only on the record and briefs then on file. Pursuant

to such reconsideration the original dissenting opinion prepared by Mr. Justice CHAPMAN has been and is now concurred in by Mr. Justice ADAMS, Mr. Justice TERRELL and Mr. Justice BROWN, while Mr. Justice THOMAS, Mr. Justice SEBRING and Mr. Chief Justice BUFORD adhere to the original opinion and judgment prepared by Mr. Justice THOMAS. Mr. Chief Justice BUFORD has prepared a dissenting opinion which will be filed herewith.

The original opinion by Mr. Justice THOMAS now takes the status of a dissenting opinion.

The majority of the Court having concurred in a judgment of reversal based on the opinion of Mr. Justice CHAPMAN, which now becomes the controlling opinion in this case, the judgment of affirmance heretofore entered is vacated and the judgment is reversed and the cause remanded for a new trial.

So ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.

CHAPMAN, J.:

The attending circumstances shortly preceding the signing of the alleged written confession by the appellant, as reflected by the record, are such as to create in my mind an abiding conviction that it was obtained by influences calculated to delude the mind of an immature and ignorant colored boy of its far reaching import and legal consequences. It is admitted that without the signed confession it is impossible to sustain the judgment of conviction and imposition of the death penalty. Poverty, like a huge stone hung about the neck, deterred the development of beneficial facts of the controversy from the moment of appellant's arrest until the death penalty was imposed.

The trial court fully discharged his offiical statutory duty by appointing counsel to represent this indigent appellant. The deceased, Johnnie Mayo, a white man, sustained mortal wounds at his place of business near Marianna, Florida, around 9:00 o'clock A. M., February 5, 1940, and was first found in a dying condition by Raymond Speight and Red

Hicks, colored men, then in the vicinity; five colored men, including appellant, were immediately arrested on suspicion and charged with the crime, but, after investigation by the authorities, were each discharged.

The appellant continued to live in the community, and sixteen months thereafter he and Jabo Pittman were arrested the second time on the same charge by an investigator sent there to ferret out the guilty party. Pittman was incarcerated at Marianna, while appellant was transferred some fifty miles away from his friends, family and other relatives, to the Quincy jail. Instructions were given not to permit the appellant to talk with any one but the jailers and be held "incommunicado." The investigator visited and questioned each, ultimately resulting in Pittman's discharge and appellant's indictment for the murder of the deceased.

The record reflects surrounding circumstances shortly prior to the time of signing the written confession, viz: (A) the appellant was visited at the Quincy jail by three deputy sheriffs of Marianna and questioned about the crime, and when he refused to talk was told "that some dark night he would be taken out and then he would talk;" (b) the appellant knew that a mob had a short time previously stormed the Quincy jail (in which appellant was confined) and took a negro therefrom who was by the mob lynched; (c) the appellant, shortly after lynching, was transferred from the the Quincy jail to the Tallahassee jail, it being deducible that the transfer was made for the appellant's protection; (e) when the transfer was being made the appellant made the confession, which was reduced to writing and later signed; (f) the colored boy was deprived of the benefit of advice of his relatives and counsel could not be appointed by the court under the law until he had been indicted; (g) the appellant was handcuffed and placed on the rear seat of an automobile with the investigator, while officers on the front seat drove the car at a high rate of speed from Quincy to Tallahassee; (h) it is deducible that the car was driven at a high rate of speed for the alleged protection of the appellant; (i) the investigator told appellant (when being transferred) that he had read a death warrant to a colored boy named "Slim," an

acquaintance of the appellant, whom the appellant had recently seen at Cottondale a free man; (j) the investigator also told appellant if he would talk he would not get. more than a life sentence and possibly less, and "talk" in this instance to the appellant meant a confession, which he shortly thereafter made to the investigator; and, on reaching Tallahassee, it was drafted, read and signed by the appellant; (k) the investigator advised the appellant as to his constitutional rights (but the record fails to give detailed instructions or the definition of the constitutional rights of the appellant).

It is established that in order to render a confession voluntary or admissible, the mind of the accused should at the time it is obtained or made be free to act uninfluenced by fear or hope. If the attending circumstances or declarations of those present be calculated to delude the accused as to his true position and exert an improper and undue influence over his mind, then the confession is unlawfully obtained. This rule is sustained by this Court and the Supreme Court of the United States. The case of White v. Texas, 310 U. S. 530, 60 S. Ct. 1032, 84 L. Ed. 1342, involved a confession. It was charged that the same was unlawfully obtained by improper and undue influence exerted over the mind of the accused. White was an illiterate farm hand. He was arrested and kept incommunicado for six or seven days. He was not allowed to consult with relatives or friends or permitted to talk or advise with an attorney; and was taken at night to the woods during the time and later taken to Beaumont, where the alleged confession was made. The men taking the accused to the woods went to Beaumont, as they knew a statement would be given; they excluded the public and questioned the accused from 11:00 A. M. until 3:30 A. M.; and was repeatedly interrogated by a private prosecutor, when the defendant began to cry. The coerced confession, the court held, violated the due process clause of the Fourteenth Amendment of the Federal Constitution.

The case of Brown v. Mississippi, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682, involved a confession obtained by undue influence and coercion. The court held a confession thus ob-

tained void, and concluded that coercing or unlawfully influencing a confession and then using the same in a court of justice had been the curse of all countries; that it represented the chief iniquity, the crowning infamy of the Star Chamber and the Inquisition, and other similar institutions. The duty of maintaining the constitutional rights of a person on trial for his life rises above mere rules of procedure and whenever the court is clearly satisfied of the violation it will not sanction its approval.

The case of Ward v. Texas, 316 U. S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663, involved a confession. The facts are not disputed (text 62 S. Ct. pp. 1141-2):

". . . Petitioner's contention that he was beaten, whipped and burned by Sheriff Sweeten just before the confession was made, however, was squarely denied. All of the officers involved asserted that he had not been mistreated, with the exception of the slap by Redfearn. Sweeten's explanation of how the confession was obtained was: 'We just talked that confession out of him. It took us 20 to 30 minutes to get that confession.' And one of the patrolmen who took the petitioner to the jail in Athens stated: 'We just talked to him to get that statement. Yes, sir, we just sweet talked him out of it.' Several witnesses who were not officers testified that they had examined petitioner's body and found no bruises or burns. Only the sheriff of Titus county corroborated petitioner's charges. He testified that when petitioner was back in the Gilmer jail several days after the confession, 'I saw some marks on his neck and shoulders and arms that appears to be cigarette stub burns. Yes sir, they were fresh. There were several of them on his body.' "

The Court held that the confession was obtained in violation of the due process clause of the Fourteenth Amendment and said (text 62 S. Ct. p. 1143):

"This Court has set aside convictions based upon confessions extorted from ignorant persons who have been subjected to persistent and protracted questioning, or who have been threatened with mob violence, or who have been unlawfully held incommunicado without advice of friends or counsel, or

who have been taken at night to lonely and isolated places for questioning . . ."

In the case of Chambers v. Florida, 309 U. S. 227, 241 60 S. Ct. 472, 479, 84 L. Ed. 716, the United States Supreme Court, in holding void a confession, in part said (text 309 U. S. pp. 237-8) ;

"The testimony of centuries, in governments of varying kinds over populations of different races and beliefs, stood as proof that physical and mental torture and coercion had brought about the tragically unjust sacrifices of some who were the noblest and most useful of their generations. The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or unpopular had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have almost always been the poor, the ignorant, the numerically weak, the friendless, and the powerless."

See Ziang Sun Wan v. United States, 266 U. S. 1, 14, 45 S. Ct. 1, 3, 69 L. Ed. 131; Canty v. Alabama, 309 U. S. 629, 60 S. Ct. 612, 84 L. Ed. 988; Lomax v. Texas, 313 U. S. 544, 61 S. Ct. 956, 85 L. Ed. 1511; Vernon v. Alabama, 313 U. S. 547, 61 S. Ct. 1092, 85 L. Ed. 1513.

The voluntariness of a confession was before this Court in the case of Simon, a Slave, v. State of Florida, 5 Fla. 285, decided in 1853. Simon, a slave, was indicted by an Escambia County grand jury for arson. A confession was admitted in evidence during the progress of the trial against him over timely objections of counsel. It was obtained in the following manner: The accused was arrested on suspicion and carried before a justice of the peace. A large and excited crowd attended; the excited populace remained without the office but within the observation of the accused. The accused exhibited fright and alarm when the magistrate urged the accused to confess his guilt by remarking that they (the mob) were satisfied as to his guilt and he would be placed upon trial and hanged, but that he could turn state's evi-

dence against his accomplices and save his life. This Court held the confession was obtained by unlawful methods and improper influence and said (text 5 Fla. 296) :

"To render a confession voluntary and admissible as evidence, the mind of the accused should at the time be free to act, uninfluenced by fear or hope. To exclude it as testimony, it is not necessary that any *direct* promises or threats be made to the accused. It is sufficient, if the attending circumstances, or declarations of those present, be calculated to delude the prisoner as to his true position, and exert an improper and undue influence over his mind."

The rule *supra* was reaffirmed by this Court in Dixon v. State, 13 Fla. 336, and Coffee v. State, 25 Fla. 501, 6 So. 493.

The above rule has never been abandoned but is now in harmony with our previous rulings. See Williams v. State, 143 Fla. 826, 197 So. 526; Clay v. State, 143 Fla. 204, 196 So. 462; Smith v. State, 135 Fla. 835, 186 So. 203; Cawthon v. State, 118 Fla. 394; 159 So. 366; Dabney v. State, 119 Fla. 341, 161 So. 380; Harrison v. State, 110 Fla. 420, 148 So. 882; Nickels v. State, 90 Fla. 659, 106 So. 479; Coffee v. State, 25 Fla. 501, 6 So. 493; Green v. State, 40 Fla. 191, 23 So. 851; McNish v. State, 47 Fla. 69, 36 So. 176; Sims v. State, 59 Fla. 38, 52 So. 198; Williams v. State 48 Fla. 65, 37 So. 521; Moore v. State, 68 Fla. 91, 66 So. 431; McDonald v. State, 70 Fla. 250, 70 So. 24; Davis v. State, 90 Fla. 217, 105 So. 843.

TERRELL, BROWN and ADAMS, JJ., concur.

BUFORD, C. J., dissenting:

The adoption by a majority of the court of the dissenting opinion prepared by Mr. Justice CHAPMAN and filed herein on December 18th, 1942, must result in the reversal of the judgment of conviction with the holding that the alleged confession of the appellant is either inadmissible in evidence against him or else its probative force was insufficient, when taken with all other evidence, to warrant conviction. Without the confession the evidence, though strongly pointing to appellant's guilt, is not sufficient to sustain a conviction of any degree of unlawful homicide.

The same confession was introduced upon the first trial

(See Harrison v. State, 149 Fla. 365, 5 So. (2nd) 703) and all the facts surrounding the confession were shown by the record in that appeal that are shown in that regard on this appeal.

The admission of the confession was assigned as error.

On consideration of that appeal, we found no error in the admission of the proof of confession but reversed the judgment because of the failure of the court to adequately instruct the jury in regard to the consideration of the evidence of confession.

I am of the opinion that the evidence by way of confession was properly admitted by the trial court and that, having been legally admitted, its probative force and effect became a jury question when submitted under proper instructions to the jury. Two fair and impartial juries have considered all of the evidence and returned like verdicts.

As I read and construe the opinion of Mr. Justice CHAPMAN, which now appears about to be adopted by a majority of the Court, the result is the invasion of the province of the jury by substituting the Court's findings as to the probative force and effect of the evidence for that of the jury and thereby allowing a self-confessed twice-convicted murderer to go free.

It appears to me that in fairness to the trial court, it is incumbent upon the Supreme Court to now adjudicate and clearly state whether or not the trial court committed reversible error in admitting the confession in evidence so as to leave no doubt as to how to further proceed.

The record, as a whole, I think, reflects no reversible error.

PER CURIAM:

We have before us a petition for clarification of opinion filed by the State. The petition is directed to our opinion filed on February 19, 1943.

Mr. Justice TERRELL, Mr. Justice BROWN, Mr. Justice CHAPMAN and Mr. Justice ADAMS were and are of the opinion that the confession was illegally obtained and therefore inadmissible in evidence, and were also of the opinion, that the evidence is insufficient to sustain a conviction without the confession.

The petition is therefore granted.

So ordered.

TERRELL, BROWN, CHAPMAN and ADAMS, JJ., concur.

BUFORD, C. J., THOMAS and SEBRING, JJ., dissent.