KAHN, C.J.
Nukarri K. Williams appeals his convictions and sentences for first-degree murder and attempted first-degree murder. The State sought the death penalty, but the trial court sentenced Williams to life imprisonment. Williams argues the trial court reversibly erred by allowing Williams to retain counsel who did not meet all the requirements of Florida Rule of Criminal Procedure 3.112(f). We affirm the convictions and sentences.

BACKGROUND

One month before his trial, Williams’ family hired a private attorney, Mr. Colle-ton, whom Williams wished to have represent him. The trial judge conducted a hearing on the matter on September 2, 2003. Williams testified, under oath, at the hearing. The following exchange took place:
The Court: Mr. Williams, Mr. Colleton has filed a motion to come in as substitute counsel to take over from the previous attorneys that have been representing you, Mr. Way and Mr. Leace. Is that your desire to have Mr. Colleton come in and represent you?
The Defendant: Yes.
Fully aware that Florida Rule of Criminal Procedure 3.112(f) imposes certain requirements upon lead counsel in death penalty cases, the trial judge questioned Mr. Colleton about his qualifications to represent a defendant in a death penalty case. In response, Mr. Colleton listed his experience as a criminal attorney for more than 20 years. Mr. Colleton conceded that:
I think the only matter that I do not meet the letter of the rule would be with regard to having tried a death penalty case or two death penalty cases.
The trial judge, unsure whether Mr. Colle-ton satisfied the criteria, sought a waiver of rule 3.112 from Williams in the event Mr. Colleton did not qualify under the rule. The trial judge asked Williams a few questions:
The Court: Mr. Williams, what we’re talking about is the Supreme Court has set up rules by which persons qualify to be on a death penalty case. These rules are quite technical. It may turn out— maybe I misread the rule, maybe Mr. Colleton does not technically qualify for this rule. If he does not qualify under this rule, do you still want him to represent you in this case?
The Defendant: Yes, sir.
The Court: Do you understand that down the road you’re not going to be able to complain that — you know, and I think he does, frankly, but it may be that he doesn’t — assuming he does not qualify under this rule, you’re not going to be able to go to Court and say, my lawyer didn’t qualify, therefore, you need to set this judgment aside. Do you understand what I’m saying?
The Defendant: Yes, sir.
The Court: Do you wish for Mr. Colle-ton to come on to your case?
The Defendant: Yes, sir.
Upon Williams’ request, the trial court granted the substitution of counsel motion.
On June 7, 2004, a jury found Williams guilty of both first-degree murder and attempted first-degree murder. In the sentencing phase of the trial, the jury did not recommend the death penalty, opting for life in prison without the possibility of parole. Accordingly, the court sentenced Williams to life without parole. Williams now appeals and argues that he should have been protected from his knowing choice of counsel.

*1236
ANALYSIS

Florida Rule of Criminal Procedure 3.112(f) establishes minimum standards for attorneys in capital cases. Under the rule, attorneys acting as lead counsel in such cases must meet the following criteria:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) are experienced and active trial practitioners with at least five years of litigation experience in the field of criminal law; and
(3) have prior experience as lead counsel in no fewer than nine state or federal jury trials of serious and complex cases which were tried to completion, as well as prior experience as lead defense counsel or cocounsel in at least two state or federal cases tried to completion in which the death penalty was sought. In addition, of the nine jury trials which were tried to completion, the attorney should have been lead counsel in at least three cases in which the charge was murder; or alternatively, of the nine jury trials, at least one was a murder trial and an additional five were felony jury trials; and
(4) are familiar with the practice and procedure of the criminal courts of the jurisdiction; and
(5) are familiar with and experienced in the utilization of expert witnesses and evidence, including but not limited to psychiatric and forensic evidence; and
(6) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases, including but not limited to the investigation and presentation of evidence in mitigation of the death penalty; and
(7) have attended within the last two years a continuing legal education program of at least twelve hours’ duration devoted specifically to the defense of capital cases. Attorneys who do not meet the continuing legal education requirement on July 1, 2002, shall have until March 1, 2003, in which to satisfy the continuing legal education requirement.
Fla. R.Crim. P. 3.112(f) (emphasis added). The underscored language provides the basis for the present claim. Lead defense counsel, Mr. Colleton, despite being an accomplished attorney, never participated in a death penalty case before handling Williams’ trial. Williams claims that, by misconstruing the rule and assigning Mr. Colleton as lead counsel in this case, the trial court violated Florida Rule of Criminal Procedure 3.112(f) and, as a result, committed reversible error.
As Williams not only failed to object to Mr. Colleton’s representation at trial, but affirmatively chose Mr. Colleton to represent him, we must presume Williams considers the trial court’s failure to follow the rule fundamental error. The standard of review for a pure question of law is de novo. See Jones v. State, 912 So.2d 686 (Fla. 1st DCA 2005). Williams’ argument fails for several reasons.
First, Williams has mixed practice and procedural rules with substantive law. The Florida Supreme Court differentiated between substantive law and procedural rules in Haven Federal Savings & Loan Ass’n v. Kirian, 579 So.2d 730, 732 (Fla.1991):
Substantive law has been defined as that part of the law which creates, defines, and regulates rights, or that part of the law which courts are established to administer. It includes those rules and principles which fix and declare the primary rights of individuals with respect towards their persons and property. On the other hand, practice and procedure *1237 “encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. ‘Practice and procedure’ may be described as the machinery of the judicial process as opposed to the product thereof.” It is the method of conducting litigation involving rights and corresponding defenses.
(citations omitted). Substantive law creates substantive rights; rules of procedure, however, “merely provide the remedies to enforce rights.” State v. Dorian, 619 So.2d 311, 313 (Fla. 3d DCA 1993), quashed on other grounds, 642 So.2d 1359 (Fla.1994); see Birnholz v. 44 Wall St. Fund, Inc., 880 F.2d 335, 339 (11th Cir.1989) (finding that procedural rules are “legal machinery and not a fountain of legal rights”). The Supreme Court Criminal Rules of Procedure Committee included the following comment to rule 3.112:
These standards are not intended to establish any independent legal rights. ... Any claims of ineffective assistance of counsel will be controlled by Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ].
Fla. R.Crim. P. 3.112 Comm. Cmts. (emphasis added).
The supreme court characterizes rule 3.112 as a rule of efficiency intended to decrease the “number of claims of ineffective assistance in postconviction proceedings.” In re Amend. to Fla. Rules of Crim. P. — Rule 3.112 Minimum Standards for Attorneys in Capital Cases, 820 So.2d 185, 194 (Fla.2002) (amending rule 3.112 to apply to privately retained attorneys). As a result, rule 3.112 does not provide Williams with an independent right to relief. Strickland will control any argument that Mr. Colleton rendered ineffective assistance of counsel. No such claim, however, has been raised.
Instead, Williams argues that the Florida Supreme Court has prohibited death penalty defendants from waiving rule 3.112 and, as a result, any such waiver nullifies a subsequent conviction. See In re Amend, to Fla. Rules of Crim. P. — Rule 3.112, 820 So.2d at 192 (declining to adopt a waiver provision). Where no right exists, the question of waiver does not arise. See Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) (defining “waiver” as “the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right”); see also Black’s Law Dictionary 1574 (7th ed.) (defining “waiver” as “[t]he voluntary relinquishment or abandonment — express or implied — of a legal right or advantage”). As discussed above, rule 3.112, as a rule of procedure, establishes no independent right to relief. Instead, the rule merely governs the machinery of court proceedings.
The Sixth Amendment protects the right to put on a trial defense, including the right to waive assistance of counsel and represent one’s self. See Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (“The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.”). Respecting the constitutional right to self-representation, the Florida Supreme Court has affirmed numerous death penalty convictions in which defendants represented themselves. See, e.g., Diaz v. State, 513 So.2d 1045 (Fla.1987); Muhammad v. State, 494 So.2d 969 (Fla.1986); Johnston v. State, 497 So.2d 863 (Fla.1986); Jones v. State, 449 So.2d 253 (Fla.1984). In situations where a defendant’s Sixth Amendment right conflicts with a rule of procedure, the defendant’s constitutional right must prevail. *1238 See Harrison v. State, 152 Fla. 86, 12 So.2d 307, 309 (1943) (adopting, on rehearing, Justice Chapman’s opinion as the majority opinion: “The duty of maintaining the constitutional rights of a person on trial for his life rises above mere rules of procedure and whenever the court is clearly satisfied of the violation it will not sanction its approval”). Prohibiting a defendant from hiring his choice of attorney raises serious Sixth Amendment questions, especially in light of the fact that defendants are constitutionally empowered to represent themselves in such proceedings. Accordingly, we decline to ignore Williams’ exercise of his constitutional right.
As suggested above, Williams’ argument neglects to even address Strickland. To establish ineffective assistance of counsel, a convicted criminal defendant must satisfy the two-prong requirement of Strickland: (1) “counsel’s representation fell below an objective standard of reasonableness” and (2) “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 687-88, 694, 104 S.Ct. 2052; see Huff v. State, 762 So.2d 476, 480 (Fla.2000) (“In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate that counsel’s performance was deficient and that there is a reasonable probability that but for the deficiency, the outcome would have been different.”). We have noted the following claim in Williams’ brief, advanced without reference to the trial record:
Based upon a review of the record, it is clear that Mr. Colleton was an inexperienced death penalty attorney who had no business representing the defendant. At best, Mr. Williams received ineffective assistance of counsel in his first degree murder trial.
Williams points to no instance, in the eighteen volumes of record, where Mr. Colle-ton rendered ineffective assistance.
Finally, if any error could be attributed to the trial court, such error was harmless. See Walden v. State, 319 So.2d 51, 52 (Fla. 1st DCA 1975) (“ ‘[T]he violation of a rule of procedure prescribed by this Court does not call for a reversal of a conviction unless the record discloses that non-compliance with the rule resulted in prejudice or harm to the defendant.’ ” (quoting Richardson v. State, 246 So.2d 771, 774 (Fla.1971))); Salamone v. State, 247 So.2d 780, 781 (Fla. 3d DCA 1971) (same). The specter of the penalty of death distinguishes capital cases from all others. The jury considers the appropriateness of death during the sentencing phase of trial. See Armstrong v. State, 862 So.2d 705, 724 (Fla.2003) (Anstead, J., specially concurring) (explaining that the sentencing phase of a death penalty case more resembles a separate trial than it does a non-capital sentencing proceeding). The major thrust of rule 3.112(f), therefore, goes to the sentencing phase of a capital trial, as it is this part of the capital trial that distinguishes it from other trials. Certainly, no special rules apply to lawyers who represent defendants in non-death capital cases. As Williams did not receive the death penalty, Mr. Colleton’s failure to qualify under rule 3.112(f), if error, is harmless. Again, we are directed to no error, committed by either the trial court or defense counsel, during the guilt phase of the trial.
AFFIRMED.
WOLF and BENTON, JJ., concur.