ISRAEL GREEN, PLAINTIFF IN ERROR, VS. THE STATE OF
FLORIDA, DEFENDANT IN ERROR.

1. If the court erroneously overrules a challenge for cause and
   thereafter the challenging party excludes the obnoxious juror
   by a peremptory challenge, he can not be injured by such
   ruling unless it appears that before the jury was sworn his
   quiver of peremptory challenges was exhausted.

2. There mere fact that the name of a particular person is twice
   drawn from the same jury box in one year, where there is no
   evidence that the name was placed in the box on two separate
   slips of paper intentionally, or fraudulently, or from any im-
   proper motive on the part of the officials charged with the
   preparation of the box, or other person, is no ground for
   challenge to the array of a special venire containing the sec-
   ond drawing of such name.

3. The law does not exclude evidence of confessions made to an
   officer, even though the party making them be at the time
   in prison. The fact that they were made to an officer by a
   prisoner may be considered by the court in determining wheth-
   er the confession was free and voluntary or produced by du-
   ress, hope of reward or other improper influence; but if found
   to be otherwise admissible the confession should not be ex-
   cluded for this reason alone.

4. In an indictment against seven persons charging that all of
   them assaulted deceased with a premeditated design to effect
   death, that one of them committed a felony by murdering the
   deceased, while the others from a premeditated design to ef-
   fect death were feloniously present aiding, abetting and as-
   sisting in the commission thereof, all are indicted as princi-
   pals; the one in the first degree, and the others in the second
   degree. In such case a conviction against all of them will be
   sustained on proper proof that either one committed the mur-
   der, and that the others were present, aiding and abetting in
   the commission of the same, and the acquittal or conviction of
   a lesser offense than murder in the first degree of any one
   does not operate as a bar to the conviction of another of
   murder in the first degree.

5.  An instruction to the jury that "the prisoner's statement
    should be weighed by you like all other testimony, and you
    may, if you see fit, base your verdict on it alone," is properly
    refused.

Writ of Error to the Circuit Court for Hamilton
county.

The facts in the case are stated in the opinion of the
court.

*B. B. Johnson*, for Plaintiff in Error.

*The Attorney General*, for Defendant in Error.

CARTER, J.:

The plaintiff in error was convicted of murder in
the first degree at the Fall term, 1897, of the Circuit
Court of Hamilton county, and from the death sentence
imposed upon him sued out this writ of error.   The in-
dictment charged "that Jake Blue, Israel Green, Abe
Dixon, Will Murphy, Dave Mitchell, Gilbert George
and Boykin Brown, late of said county, on the 24th day
of July, A. D. 1896, at and in the county and State afore-
said, with force and arms, and with a deadly weapon,
to-wit: a pistol, which said pistol was then and there
loaded and charged with gunpowder and leaden bullets,
and which the said Jake Blue then and there had and
held in one of his hands, in and upon one G. M. Fletcher,
unlawfully of their malice aforethought, and from a pre-
meditated design to effect the death of the said G. M.
Fletcher, did make an assault, and the said Jake Blue
did then and there unlawfully, feloniously of his malice
aforethought, and from a premeditated design to effect
the death of the said G. M. Fletcher, shoot off and dis-
charge the pistol aforesaid, so loaded and charged as
aforesaid, at, towards, against and upon the said G. M.

Fletcher, and the said Jake Blue did then and there un-
lawfully, feloniously of his malice aforethought, design
to effect the death of the said G. M. Fletcher, strike,
penetrate and wound the said G. M. Fletcher with one
of leaden bullets aforesaid, so shot off and discharged
out of the pistol aforesaid, thereby giving and inflicting
unlawfully, and from a premeditated design to effect the
death of the said G. M. Fletcher, in and upon the body
of the said G. M. Fletcher, one mortal wound of the
depth and breadth to the jurors unknown, of and from
which mortal wound the said G. M. Fletcher then and
there instantly died.   And the jurors aforesaid, upon
their oaths aforesaid, do further present that the said
Israel Green, Abe Dixon, Will Murphy, Dave Mitchell,
Gilbert George and Boykin Brown were then and there
present, unlawfully and from a premeditated design to
effect the death of the said G. M. Fletcher, aiding, abet-
ting,   assisting,   comforting,   procuring,   encourag-
ing, counseling and commanding the said Jake Blue,
the murder aforesaid, in manner and form aforesaid, to
do and commit.   So the jurors aforesaid upon their
oaths aforesaid do say, that the said Jake Blue, Israel
Green, Abe Dixon, Will Murphy, Dave Mitchell, Gil-
bert George and Boykin Brown, at the time aforesaid
and in the county, circuit and State aforesaid, did com-
mit the crime of murder in the first degree contrary,"
&c.

I.   It is insisted that the court erred in overruling
defendant's challenge of a proposed juror for cause.   It
is unnecessary for us to consider whether this ruling was
or was not erroneous, because the record shows that
when his challenge for cause was disallowed the defend-
ant peremptorily challenged the proposed juror, and it
does not show that defendant objected to any other
juror tendered him, or that his peremptory challenges

were exhausted at the time the jury were sworn. In 1 Thompson on Trials, §115, the rule is stated to be, that if the court erroneously overrules a challenge for cause, and therafter the challenging party excludes the obnoxious juror by a peremptory challenge, he can not assign the ruling of the court for error unless it appear that before the jury was sworn his quiver of peremptory challenges was exhausted; and it seems that some courts go even further and hold in such cases that it must appear, not only that the peremptory challenges were exhausted, but that some objectionable person took his place upon the jury, who otherwise would have been excluded by a peremptory challenge.. It is unnecessary for us to determine at this time whether the rule goes to the extent of requiring a showing that some objectionable person served upon the jury who might have been excluded by a peremptory challenge, but we are entirely satisfied that a defendant suffers no injury in such a case unless it is made to appear that his peremptory challenges were exhausted before the jury were sworn. Montague v. State, 17 Fla. 662; Andrews v. State, 21 Fla. 598, text, 605; Denham v. State, 22 Fla. 664.

II. The court drew from the jury box fifty names as a special venire from which to supply deficiencies in the regular panel in selecting a jury to try this case. When the regular panel was exhausted, the name of J. S. Green, being first on the special venire, was called. This proposed juror stated that he was a member of the grand jury empanelled at the Fall term of the court; that he knew of no other J. S. Green in the county; that there was no other J. S. Green in the county. The defendant thereupon moved the court to quash the special venire upon the ground that it was improperly and illegally drawn, "because there was only one J. S. Green

in the county, and that two J. S. Greens were drawn from the jury box." The overruling of this motion is assigned as error. Section 3, Chapter 4122, acts of 1893, requires the board of county commissioners of the several counties, at a meeting to be held the first week in January of each year, or as soon thereafter as practicable, to select from the list of male persons qualified to serve as jurors, and make out a list of 'a certain number of persons as therein provided, properly qualified to serve as jurors, with a proviso that if any person so selected shall be ascertained to be disqualified or incompetent to serve as a juror, the same shall not affect the legality of such list, or be cause of challenge to the array of any jury chosen from such list, but that the disqualified person shall be subject to be challenged for cause. Section 4 requires the clerk of the Circuit Court, under certain specific directions, to write out the names of the persons contained in the selected list on separate pieces of paper and deposit them in a box to be closed and kept in accordance with specific directions. Section 5, as amended by Chapter 4386, acts of 1895, requires the judge at every regular or special term of the court, under certain regulations, to draw from this box the names of persons to serve as jurors, both grand and petit, at the next term of the court, and on the opening day of such next term to place the names of the persons in attendance so drawn in a box, and to draw therefrom the names of eighteen persons to serve as grand jurors; the remainder to constitute a panel of petit jurors for the first week of the court. Section 6, as amended by said act of 1895, requires the clerk, under certain regulations, to draw the names from the jury box when the judge has failed to do so as required by the preceding section. Section 1158 Revised Statutes, as amended by said act of 1895, authorizes the judge to

draw special venires from this box, and under this pro-
vision the special venire was drawn in this case.   If the
provisions of the statutes quoted were complied with,
and there was no other J. S. Green in the county, then
it is reasonably certain that Mr. Green's name was on
two separate slips of paper in the jury box, and that it
was regularly drawn as a juror for this Fall term, and
again drawn on the special venire.   We do not think
the mere fact that his name was placed upon two sep-
arate pieces of paper in the jury box, or that his name
was regularly drawn twice from the box during the same
year, was such an irregularity as to render illegal the
entire box, or any venire summoned therefrom.   It was,
perhaps, an error of the clerk, who in transcribing to
slips of paper for deposit in the jury box the names con-
tained on the commissioners' list, no doubt duplicated
the name of Mr. Green, but as it is not intimated that his
action was intentional or done from any improper mo-
tive, we do not think the entire special venire should
have been quashed.   This juror was not taken upon the
jury which tried the defendant, and we do not think he
has any legal ground to complain of the irregularity.
In arriving at this conclusion we do not overlook the
statement in Gladdin v. State, 13 Fla. 623, that "irregu-
larities however slight, when they show a departure from
the provisions of the law in respect to the selection, sum-
moning and empanelling of jurors, are proper grounds
of objection to the jury, and form grounds of challenge
to the array."   The present case does not fall within even
this broad statement of the law.   The mere fact that
the name of a particular person may be twice found in,
or drawn from, a jury box during the same year, is not
an irregularity in the selection, summoning or empan-
elling of jurors.   His name was duly selected and placed
in the box, and if he is rendered incompetent or dis-

qualified by having been once regularly drawn, advantage may be taken of that fact by challenging him for cause, but his disqualification is not under the proviso of section 3, act of 1893, a ground of challenge to the array.

III. The defendant objected to the testimony of M. H. James, a State witness, detailing certain inculpatory statements made to him by the defendant. The witness was a deputy sheriff, and the statements were made by defendant while in prison awaiting trial under this indictment. The witness testified that the statements were freely and voluntarily made; that no improper influences were exerted to induce them, and there is in the record not a syllable of evidence contradicting his testimony in this respect. Indeed the defendant, though a witness, did not deny making the statements attributed to him, nor intimate that they were improperly obtained; but, on the contrary, testified to the same matters substantially as were claimed by James to have been admitted to him. The defendant's objection to the testimony of this witness was that defendant's confessions were inadmissible, because the State had not shown that they were voluntarily made, which as we have stated, is not borne out by the record, and because the defendant at the time was in prison, and made the confessions to a deputy sheriff. The law does not exclude confessions made to an officer, even though the party making them be at the time in prison. The fact that the defendant was at the time in prison, or under arrest, or that the confession was made to an officer, may be considered by the court in determining whether the confession was free and voluntary, or produced by duress, hope of reward, or other improper influence; but if found to be otherwise admissible, it should not be excluded for these reasons alone. Holland v. State, 39 Fla. 178, 22

South. Rep. 298; 6 Am. & Eng. Ency. of Law (2nd ed.), p. 536.

IV. The defendant requested the court to charge the jury as follows: "Jake Blue, being charged of doing the shooting that killed young Fletcher, and he Jake Blue, having heretofore been convicted of murder in the second degree, you can not convict the prisoner of a higher offense than murder in the second degree, if you should convict him at all." The court properly refused this charge, for several reasons: First, there was no evidence before the jury that Jake Blue had been convicted of murder in the second degree, or of any other offense under this indictment; the defendant was tried alone, and there was no evidence before the jury that any other defendant embraced in the indictment had been tried or convicted; second, the indictment in this case charged each and all of the defendants with murder in the first degree. Jake Blue was charged as principal of the first degree, and the defendant and five others as principals of the second degree in this crime. 1 Bishop's New Criminal Law, §648. Although the indictment charged that Blue fired the fatal shot, the defendant could be properly convicted upon proof that he fired it, or that it was fired by either of the other defendants while he was present aiding and abetting the act, provided of course the homicide amounted to murder in the first degree. Bryan v. State, 19 Fla. 864; Albritton v. State, 32 Fla. 358, 13 South. Rep. 955. And the acquittal or conviction of Blue or any other defendant, or their conviction of a lesser offense than that of murder in the first degree, would not operate as a bar to defendant's conviction for murder in the first degree, if the evidence was sufficient to show that he was guilty of that crime. Montague v. State, 17 Fla. 662; 1 Bishop's New Crim. Law, §800; 2 Bishop's Crim. Proc. §3.

V.   The court did not err in refusing to charge the jury at the defendant's request that "the prisoner's statement should be weighed by you like all other testimony, and you may if you see fit base your verdict on it alone." The defendant under Chapter 4400, acts of 1895, when he elects to avail himself of its provisions, assumes the status of a witness in his own behalf, and what he states on such examination is subject to the tests established for weighing the testimony of other witnesses; but he is no longer authorized to make a statement to the jury, under oath of the matters of his defense, as was the case prior to the enactment of said Chapter 4400. Hart v. State, 38 Fla. 39, 20 South. Rep. 805.   The first clause of this instruction, notwithstanding the use of the word "statement" (Lester v. State, 37 Fla. 382, text, 389, 20 South. Rep. 232), might with entire propriety have been given; but the second clause, to the effect that the jury might *if they saw fit*, base their verdict upon the defendant's statement alone, was misleading.   Aside from the fact that this instruction singled out and gave prominence to the testimony of a particular witness, it did not require the jury to *believe* the testimony of the defendant to be true in order to base a verdict upon it, but authorized them *if they saw fit*, to discard all other evidence in the case, however credible, and base a verdict upon defendant's evidence, however incredible.   No jury is authorizd to arbitrarily or capriciously disregard or accept the testimony of any witness, or to base their verdict upon the testimony of a particular witness without reference to other credible evidence before them. It is their duty to consider, compare and weigh all the evidence in the case, reconciling conflicts, if they can, and at all events to base their verdict upon that portion of the evidence which they believe to be true, discarding

that only which they do not believe to be true. Hicks v. State, 25 Fla. 535, 6 South. Rep. 441.

VI. The court committed no error in overruling the motion for a new trial. The evidence was sufficient to support the verdict, and the judgment of the court below is affirmed.