184 So.2d 711 (1966)
M.T. Connell JACOBS, Appellant,
v.
STATE of Florida, Appellee.
No. G-356.
District Court of Appeal of Florida. First District.
April 5, 1966.
*712 James J. Caruso and Carl F. Crossley, Sp. Assts. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and John S. Burton, Asst. Atty. Gen., for appellee.
WIGGINTON, Judge.
Appellant was charged in an information with the offense of manslaughter by having caused the death of one William Owen Buck through the culpably negligent operation of a motor vehicle. The trial resulted in a verdict of guilty by a jury for which appellant was sentenced to a term of ten years imprisonment in the state prison, the sentence being suspended and appellant placed on probation. It is from the judgment of conviction and sentence that this appeal is taken.
*713 Appellant's primary contention is that the State failed to adduce any evidence proving or tending to prove the charge against him as alleged in the information. Because of this, he contends the trial judge committed error in denying his motion for directed verdict made at the close of the State's evidence, and at the conclusion of the trial.
The information which forms the basis of this prosecution charges that appellant did unlawfully by and through his own act, procurement and culpable negligence operate a Chevrolet motor vehicle in such a negligent, careless, and reckless manner as to cause a collision between two certain other motor vehicles, to wit, a 1950 Chevrolet and a 1956 Buick, which collision caused and inflicted certain mortal wounds and injuries on the body of William Owen Buck who was the occupant of the 1950 Chevrolet automobile, and from which mortal wounds William Owen Buck died.
From the foregoing it affirmatively appears without serious dispute that appellant was charged as a principal in the first degree with having committed the criminal offense of manslaughter against the State. It is equally clear that appellant was not charged with having aided, abetted, counseled, hired, or otherwise procured such offense to be committed, as proscribed by statute.[1]
The facts are not in dispute. On the critical date appellant, together with several others, engaged in a discussion regarding the relative speed of the automobiles owned by some of them. It was agreed that the Buick owned by Kinchen, one of the participants, was the fastest of the group, but a race would be necessary in order to determine whether the Ford owned by one Carter was faster than the Chevrolet owned by appellant. The group proceeded to an agreed starting point on State Road 40, a two-lane highway west of Ocala. Appellant's Chevrolet had a broken piston and Carter's Ford had a defective low gear. Because of the condition of Carter's Ford, he was given a head start in the race. Kinchen with the faster car was to go ahead of the two other two and judge the winner, but at the last minute changed his mind and started last. Appellant, who left the starting line behind Carter, overtook the latter while traveling at a medium speed of about fifty-five miles an hour. All three vehicles proceeded in a westerly direction along the highway. A witness, Sands, driving along the highway in an easterly direction arrived at the crest of the hill and observed all three vehicles approaching in their correct right lane and traveling at an excessive speed. Sands saw Kinchen's Buick pull out into his left lane in order to pass the middle vehicle, and when he did Sands drove his car off the highway on to the right shoulder of the road. Another witness standing alongside the highway saw appellant's car proceeding westerly at an estimated speed of between fifty and seventy miles an hour. At the same time he observed a vehicle driven by one Buck traveling in an easterly direction at a speed of approximately twenty-five to forty miles an hour. As the Buck vehicle reached the crest of the hill, he met the two vehicles driven by Kinchen and Carter approaching him side by side traveling at an estimated speed of ninety miles an hour. The vehicle driven by Buck proceeding easterly in the south traffic lane met head-on the vehicle driven by Kinchen in a westerly direction which was also in the south traffic lane, resulting in the death of both drivers. At the time of the collision appellant was a quarter of a mile down the road ahead of the vehicles which were following him.
*714 Under the foregoing factual situation appellant contends that the State failed to prove by any competent evidence that, as alleged in the information, he operated his vehicle in such a culpably negligent manner as to cause the collision which occurred between the vehicles operated by Kinchen and Buck. Appellant urges that the sole proximate cause of the collision was the culpable negligence of Kinchen over which appellant had no control, and for which he was not responsible. Appellant therefore concludes that the probata fails to conform to the allegata, and the court erred when it refused to direct a verdict in his favor.
Appellant concedes that the hereinabove-quoted statute which defines "principal in the first degree" (§ 776.011, F.S.A.) makes one who aids, abets, counsels, hires, or otherwise procures the commission of a criminal offense equally guilty with the person who actually perpetrates the crime. Appellant reasons, however, that if it had been the State's intention to charge him merely with having aided, abetted, counseled, or otherwise procured Kinchen in the culpably negligent operation of his motor vehicle which resulted in the death of William Owen Buck, the duty rested upon the State to so charge appellant in the information filed against him. The State having charged appellant with the substantive offense of which the evidence shows only Kinchen to be guilty, appellant contends that he could not legally be found guilty of the act of aiding and abetting for which he was not charged in the information. In support of this position appellant cites the general rule to the effect that a defendant is entitled to have the charge against him proved substantially as alleged in the indictment or information, and cannot be prosecuted for one offense and convicted and sentenced for another, even though the offenses are of the same general character or carry with them the same penalty.[2]
In the early case of Albritton v. State,[3] the indictment charged Andrew Albritton with the larceny of a cow, and Henry Albritton with having been feloniously present and aiding, abetting, counseling, and procuring the commission of the crime. The trial court charged the jury that if they found from the evidence that Henry Albritton stole the cow, they could find him guilty as charged, and that if they found Andrew Albritton was present and aiding and abetting Henry Albritton in the larceny of the cow, they could find Andrew Albritton guilty as charged. Each defendant was found guilty and sentenced, whereupon Henry Albritton appealed contending that since he was charged only with aiding and abetting in the procurement of the crime, and the court erred in charging the jury that they could find him guilty if the evidence established that he actually stole the cow. In rejecting this contention, and affirming the judgment of conviction and sentence, the Supreme Court said:
"* * * Under the indictment before us, charging Andrew Albritton with the commission of the felony, and Henry Albritton as being present, aiding, abetting, and procuring the commission of the offense, both of them could have been convicted on a state of facts showing that Henry committed the offense, and Andrew was present, aiding, abetting, and procuring the commission thereof. The offense charged against all of them is the same. * * * Under this indictment, * * * the named defendants are indicted as principals,  Andrew in the first degree, and Henry * * * in the second degree. * * * The punishment prescribed for principals in the first and second degrees is the same under our law."
From the foregoing decision it appears to be the law of this State that one *715 may be charged in an information or indictment with aiding, abetting, or procuring the commission of a criminal offense, but if the proof establishes that he actually committed the offense, a verdict finding him guilty as charged will be sustained. Conversely, it would follow that if an information, such as the one filed in the case sub judice, charges a defendant with the commission of a criminal offense, and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained.
In the later case of Green v. State[4] an indictment charged one Jake Blue with having murdered one G.M. Fletcher by shooting him with a pistol. The indictment further charged appellant, Israel Green, and five other individuals with having been feloniously present, aiding, and abetting Jake Blue in the commission of the crime. Green was tried separately from the other defendants, was convicted of murder in the first degree, and sentenced to death in the electric chair. In considering the points made by Green on appeal, the Supreme Court said:
"* * * The indictment in this case charged each and all of the defendants with murder in the first degree. Jake Blue was charged as principal of the first degree, and the defendant and five others as principals of the second degree, in this crime. 1 Bish.New Cr.Law, § 648. Although the indictment charged that Blue fired the fatal shot, the defendant could be properly convicted upon proof that he fired it, or that it was fired by either of the other defendants while he was present, aiding and abetting the act; provided, of course, the homicide amounted to murder in the first degree. Bryan v. State, 19 Fla. 864; Albritton v. State, 32 Fla. 358, 13 South. 955. And the acquittal or conviction of Blue or any other defendant, or their conviction of a lesser offense than that of murder in the first degree, would not operate as a bar to defendant's conviction for murder in the first degree, if the evidence was sufficient to show that he was guilty of that crime. Montague v. State, 17 Fla. 662; 1 Bish.New Cr.Law, § 800; 2 Bish.Cr. Proc. § 3."
From the foregoing decision the rule appears to be that under our present statute a person is a principal in the first degree whether he actually commits the crime or merely aids, abets, or procures its commission. Furthermore, it appears immaterial whether the indictment or information alleges that the defendant committed the crime, or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of either one of the acts proscribed by the statute. To the same effect are the later cases of Myers v. State,[5] and Pope v. State.[6]
Appellant's sole remaining point on appeal challenges the correctness of the trial court's ruling with respect to the admission in evidence of the confession made by defendant allegedly in violation of his constitutional rights due to lack of counsel. We have carefully considered this point but find it to be without substantial merit.
Although one of the errors assigned by appellant challenges the sufficiency of the evidence to support the verdict of guilty rendered by the jury, the points on appeal argued in his brief do not clearly include this assignment. However, in an abundance of precaution, and because of our concern regarding this phase of the case, we deem it advisable in all fairness to dispose of this contention.
The evidence clearly shows that appellant, together with others, was engaged in what is commonly known as a "drag *716 race" of motor vehicles on a two-lane public highway in Marion County. The race entailed the operation of three motor vehicles traveling in the same direction at excessive and unlawful rates of speed contrary to the laws of this state. While engaged in such unlawful activity one of the three vehicles actively participating in the race was negligently operated in such manner as to cause the death of the person who drove that vehicle, as well as another innocent party who had no connection with the race. The deaths which proximately resulted from the activities of the three persons engaged in the unlawful activity of drag racing made each of the active participants equally guilty of the criminal act which caused the death of the innocent party. The fact that it was the vehicle driven by the person appointed to judge the outcome of the race which caused the death of the innocent party does not relieve appellant from his responsibility as an active participant in the unlawful event out of which the death arose.
In Wharton it is said:
"* * * If each of two persons jointly engage in the commission of acts which amount to criminal negligence, and as a result of which a third person is killed, each may be found guilty of manslaughter even though it may be impossible to say whose act actually caused the death."[7]
The Supreme Court of Oregon, in the case of State v. Newberg,[8] quoted with approval from Clark & Marshall[9] as follows:
"`There may be principals in the second degree and accessories before the fact to involuntary manslaughter. Thus, if two men drive separate vehicles at a furious and dangerous speed along the highway, each inciting and abetting the other, and one of them drives over and kills a person, the one thus causing the death is guilty of manslaughter as principal in the first degree, and the other is guilty as principal in the second degree. * * *'"
It is our view that it was because of the weakness in appellant's contention regarding the sufficiency of the evidence to support the verdict that his assignment of error going to this point was abandoned and not pressed as a point on appeal. The judgment appealed is accordingly affirmed.
RAWLS, C.J., concurs.
CARROLL, DONALD K., J., dissents.
CARROLL, DONALD K., Judge (dissenting).
I dissent from the majority opinion and judgment for the reason that I do not believe that there was sufficient evidence before the jury to support its finding that the appellant committed the crime of manslaughter or that he aided or abetted the commission of the said crime.
First, I must acknowledge, as the majority holds, that the rule seems to be established in Florida that a person who is charged in an indictment or information with the commission of a crime may be convicted upon proof that he aided or abetted in the commission of such crime, under the provisions of Section 776.011, Florida Statutes, F.S.A., quoted in the majority opinion. That rule was recognized by the Supreme Court of Florida, although I think by way of obiter dictum, in Albritton v. State, supra, as well as in several subsequent decisions, including Green v. State, 40 Fla. 191, 23 So. 851 (1898), Brown v. State, 82 Fla. 306, 89 *717 So. 873 (1921), Jimenez v. State, 158 Fla. 719, 30 So.2d 292 (1947), and Chaudoin v. State, Fla.App., 118 So.2d 569 (1960). See also Sons v. State, 99 So.2d 888 (Fla.App. 1958), cert. den. 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed. 1160.
Although the said rule at first consideration appears to conflict with the fundamental judicial precept that the proof must conform to the allegations of the pleadings or charges, the said rule is firmly established in this state by the foregoing decisions, and this court is bound to recognize and apply that rule in the case at bar. It may be that the said rule and the mentioned precept may be reconciled by reasoning that the provisions of the statute quoted in the majority opinion (Section 776.011, Florida Statutes, F.S.A.) must be read into the charges against the appellant as a part thereof.
The question that concerns me most, however, is that raised in three of the appellant's assigned errors  that the trial court erred in denying his motions for a directed verdict and that the jury's verdict is contrary to the law and the evidence.
I do not see how a reasonable man could lawfully conclude from the evidence adduced at the trial that, beyond a reasonable doubt, the appellant was guilty either of manslaughter or of aiding and abetting the commission of manslaughter. The culpable negligence of Willie Kinchen, as shown by the evidence, was his attempt to pass the two racing cars in the face of oncoming traffic. There is not a scintilla of evidence indicating that the appellant was aware of Kinchen's intention so to pass, and hence I do not think it reasonable to hold that the appellant aided and abetted the said culpable negligence. As I view the evidence, there was no causal relationship between the appellant's conduct in engaging in the drag race and Kinchens' culpable negligence. The only such relationship would have to be the discredited "if it hadn't been for" reasoning (if it hadn't been for the race, the collision would not have occurred), but that reasoning has long been discarded by the courts as insufficient to show proximate cause in civil cases or to show liability in criminal cases.
If the appellant is to be held criminally liable for manslaughter because he participated in a race during which an act of manslaughter occurred during the race, I would think that by the extension of such reasoning the spectators lined up along the road to watch the race might be legally tried and convicted as aiders and abettors to the manslaughter, simply because the collision might not have occurred if they had not congregated and encouraged the racing. By like reasoning, also, I would think that, if the starter in a foot race at a track meet had with culpable negligence loaded his pistol with live cartridges instead of the usual blanks and shot and killed someone in the grand stand, the sprinters might be held criminally liable as aiders and abettors. Such a result, of course, would be absurd. While I recognize that these two extreme illustrations differ from the facts of the case at bar in that the appellant and the other participants may have been violating the law by engaging in the drag race, I do not think that the fact of such violation can fairly be held to overcome the fatal deficiency in the evidence  that there was no proof of a causal connection between the acts of the appellant and the culpable negligence of Willie Kinchen that caused the death in question.
That such an intent is an essential element of the offense of aiding and abetting, has been recognized apparently universally. For instance, the general rule is stated in 22 C.J.S. Criminal Law § 87, subdivision a, as follows:
"In order to aid and abet another to commit a crime, it is necessary that accused in some sort associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the *718 first degree; the same criminal intent must exist in the minds of both."
In support of the last proposition the encyclopedia cites 43 cases of the federal courts and the courts of sixteen states. While no Florida case is cited therein for the said proposition, and I have found none directly on that point, such a rule seems to follow naturally from the general rule established in Florida that one of the two elements in all common law crimes is the mental element, commonly called criminal intent. See Mills v. State, 58 Fla. 74, 51 So. 278 (1910), and Smith v. State, 71 Fla. 639, 71 So. 915 (1916). While it is within the power of the Legislature to dispense with the necessity for a criminal intent, that power, as we held in State v. Smith, 151 So.2d 889 (1963), is limited by the requirements of due process and equal protection, and "the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." At any rate, there is no Florida statute which purports to dispense with criminal intent as an element of the common law crime of culpable negligence when committed by principals in the first or second degrees. My reading of the transcript of testimony in the present case convinces me that there is no evidence therein, either direct or circumstantial, from which the jury could lawfully find that the appellant had the required criminal intent.
I have examined the entire transcript of trial proceedings, and, despite much conflicting and confusing testimony, the following facts appear to me to be established by the testimony concerning the automobile race in question: that the defendant was to race his 1950 Chevrolet against one Charles Carter, driving his Ford, for a quarter-mile distance from Geneva's Restaurant westerly to certain railroad tracks, over a highway (one lane for westbound traffic and one for eastbound); that Willie Kinchen, owner of a 1950 Buick, was to serve as the judge to determine the winner of the race; that Carter was permitted to take off first, because his car had a defective gear; that some seconds later the defendant took off and soon passed Carter's car; that shortly after the defendant had left the starting point, Kinchen jumped into his Buick and soon arrived just behind Carter's car; that in the process of passing Carter's car Kinchen drove his Buick into the eastbound lane and crashed head-on into an oncoming Chevrolet being driven by one Buck, who, along with Kinchen, was killed in the collision. There is, in my opinion, not a word of testimony in the transcript from which reasonable men could conclude that the defendant knew that Kinchen was planning to try to pass the racing cars, nor knew that Kinchen had even left the starting point for his or any other purpose, and certainly not a word that the defendant knew or had the slightest notion that Kinchen would be so reckless as to try to pass Carter's car by turning into the east lane in the face of oncoming traffic.
In view of this state of the evidence, I do not see how we can hold that the evidence supported the jury's finding that the defendant was guilty of the crime of manslaughter in the killing of Buck, or that he aided and abetted in the commission of that crime.
What perturbs me particularly about this case is that I do not think that the above evidence would be sufficient to hold the defendant even civilly responsible for the death of Buck, because, even if the defendant were negligent in engaging in the race, such negligence could not be properly held to have proximately caused Buck's death. As mentioned above, the reasoning is not permissible in civil cases that "if it hadn't been for" a certain act the accident would not or might not have happened and hence the doer of such act is liable for the accident. Certainly such reasoning, a fortiori, should not be used to convict a person of the crime of manslaughter, and yet that's the only kind of reasoning that links up the defendant's conduct to Kinchen's act that resulted in the collision.
*719 Stripping this case to its essentials: Kinchen's culpable negligence in trying to pass Carter's car in the eastbound lane in the face of oncoming traffic was indisputably the cause of Buck's death. Kinchen was clearly the principal in the first degree. In order to convict the defendant of the crime of manslaughter, the burden was upon the State to prove at the trial beyond a reasonable doubt that the defendant sufficiently participted in Kinchen's said culpable negligence so that the defendant legally aided or abetted Kinchen in the commission of his crime.
This judicial problem is made more difficult by the fact that the crime with which the defendant was charged  manslaughter through culpable negligence  happens to be one of those unusual crimes that do not require a specific intent. If this were not so, the appellant's conviction here would be invalid under the rule established in Florida that an aider and abettor, in order to be convicted as such, must be proven to have had the same specific intent as the principal in the first degree.
The just-mentioned rule was laid down by the Supreme Court of Florida in Savage and James v. State, 18 Fla. 909 (1882). In that case the appellants were indicted for the murder of one Patterson in the first degree, Savage being charged as principal in the first degree and James as principal in the second degree. They were both convicted of murder in the first degree and appealed to the Supreme Court, which reversed the judgment, set aside the verdict, and ordered a new trial. With reference to three jury instructions given by the trial court concerning the liability of James as principal in the second degree, the Supreme Court said:
"In each of the paragraphs marked 2, 5 and 6 these words are substantially repeated: `And if James was present aiding and abetting he was guilty of the same offence as principal in the second degree.' In each of the paragraphs last named this instruction is erroneous.
"In Chitty's Criminal Law, Vol. 1, p. 258, we find this language: `But to constitute a principal in the second degree there must be not only a presence and an aiding and abetting, but a participation in the felonious design, or, at least, the offence must be within the compass of the original intention.' This is the doctrine of the common law. The charge should be in effect that if James was present aiding and abetting Savage, knowing or believing that Savage intended to kill Paterson, or with a `premeditated design' to kill Paterson, aided and abetted Savage in his act, he was equally guilty with Savage.
"The reason is that one who is guilty of murder in the first degree must be charged and proved to the satisfaction of the jury to have done the act charged with a formed design to effect the death, and this is the law as to the principal in the second degree as well as in the first degree. In other respects the law of the case is well formulated in each of the propositions excepted to."
While the intention to effect death is not an element of the crime of manslaughter by culpable negligence as it is in murder in the first degree, involved in the above Savage case, I believe that the rationale of the Supreme Court's holding just quoted is applicable to the situation presented in the present appeal  namely, that, in order to convict the appellant of the crime of manslaughter by culpable negligence in the death of Buck as a principal in the second degree (aider and abettor), there must be sufficient, competent evidence from which the jury could have lawfully found that the appellant participated in the felonious design or act of Kinchen or at least knew or believed that Kinchen planned to commit the culpably negligent act that resulted in the death of Buck. As I stated above, in my opinion there is not a scintilla of such evidence in the record before us.
This conclusion seems consistent with the rule, apparently universally recognized in *720 other jurisdictions, as quoted earlier in this opinion from 22 C.J.S. Criminal Law § 87, that, in order to aid and abet another to commit a crime, it is necessary that the accused "* * * act with knowledge that an offense is to be committed * * *."
While I acknowledge that the appellant in his brief on appeal did not happen to advocate the particular theory of non-liability which I have discussed above, the heart of his argument therein, as I read his brief, is that the evidence was insufficient to support his conviction. For instance, the very final clauses of his brief are as follows: "* * * we submit that the defendant was convicted without lawful testimony on which to support such verdict of guilty of manslaughter, and the judgment of conviction should be reversed and a new trial awarded to the defendant."
Accordingly, I have reached the conclusion that the appellant's conviction was unlawful, and I would reverse the judgment appealed from. I, therefore, dissent.
NOTES
[1] § 776.011, F.S.A.

"Principal in first degree
"Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, is a principal in the first degree and may be charged, convicted and punished as such, whether he is or is not actually or constructively present at the commission of such offense."
[2] 17 Fla.Jur. 301, Indictments and Informations, § 95; Long v. State, (Fla. 1957) 92 So.2d 259.
[3] Albritton v. State, 32 Fla. 358, 13 So. 955, 956.
[4] Green v. State, 40 Fla. 191, 23 So. 851, 853.
[5] Myers v. State, 43 Fla. 500, 31 So. 275.
[6] Pope v. State, 84 Fla. 428, 94 So. 865.
[7] 1 Wharton, Criminal Law and Procedure § 290 (Anderson 1957). See also 63 A.L.R. 1225.
[8] State v. Newberg (1929), 129 Or. 564, 278 P. 568, 63 A.L.R. 1225.
[9] Clark & Marshall, Crimes, 3rd ed. § 164.