296 So.2d 109 (1974)
Arnold FLICKER and Elizabeth Flicker, Appellants,
v.
STATE of Florida, Appellees.
No. R-114.
District Court of Appeal of Florida, First District.
June 18, 1974.
*110 Richard D. Bertone, of Wagner & Bertone, Holly Hill, for appellants.
Robert L. Shevin, Atty. Gen., and Enoch J. Whitney, Asst. Atty. Gen., for appellees.
BOYER, Judge.
At a time not here material one Floyd R. Jenkins acquired from one Vivian Oyler a parcel of improved property in Volusia County, Florida, executing in her favor a mortgage securing the principal sum of $13,000. Thereafter Jenkins sold the property to Arnold Flicker and Elizabeth Flicker, his wife, defendants below and appellants here. The Flickers assumed the Oyler mortgage and executed a further mortgage to Jenkins securing the principal sum of $25,748.79.
On August 25, 1971 Mr. Flicker went to the office of the Clerk of the Circuit Court of Volusia County and presented to one Glenn F. Norman, a deputy clerk, a satisfaction of the mortgage from the Flickers to Jenkins for recording. On September 10, 1971, Mr. Flicker, accompanied by Mrs. Flicker, again went to the office of the Clerk of the Circuit Court and Mr. Flicker presented to Mr. Norman for recording a satisfaction of the mortgage from Jenkins to Oyler which had been assumed by the Flickers. On this latter occasion the deputy clerk affixed a stamp at the bottom of the instrument for the purpose of indicating the name and address of the preparer of the instrument, said stamp being as follows: "This instrument prepared by:". The deputy then handed the instrument back to Mr. Flicker who in turn handed it to Mrs. Flicker instructing her to write in the name of the person who had prepared the instrument. She filled in the name "M.E. Pierce" followed by the address "Wilburby-the-sea, Florida." In the space following the acknowledgment on said instrument appeared the name "M.E. Beck." (Testimony ultimately adduced revealed M.E. Beck and M.E. Pierce to be one and the same person, viz: a lady real estate broker whose "married name" was Pierce but who used the name "Beck" as her "professiional name.")
On October 4, 1971, a three-count information was filed against the Flickers. The first count charged that they, on August 25, 1971 "did then and there utter and publish as true to Della Grove a false or forged public record or discharge for money or property, a copy being attached marked Exhibit `A', knowing the same to be false or forged." The second count charged in the same words that on September *111 10, 1971 the Flickers uttered and published "Exhibit B" thereto attached, knowing the same to be false or forged. The third count charged that on September 9, 1971 the Flickers "did then and there forge an attestation of a notary public * * *."
At the conclusion of the trial the defendants' attorney moved for a directed verdict as to both defendants and as to all three counts of the information. The State resisted but the court ultimately stated: "All right, I'll direct a verdict of not guilty as to Elizabeth Flicker as to Count I * * *." During closing arguments the State's attorney announced to the jury that after reviewing the evidence he had decided that there was insufficient evidence to convict Mrs. Flicker as to Count I and that he had therefore asked the court to dismiss that charge against her. Although defendants' attorney made no objection at that time, when he commenced his closing argument he told the jury "Count I, Mrs. Flicker, contrary to what the State had presented on the final argument, has been dismissed because I moved for dismissal." The State's attorney thereupon stated in the presence of the jury "Now, your Honor, that's just a patent false. It is improper for counsel to bring before the jury matters of law that have been handled before the court outside of the hearing of the jury. I ask for a cautionary instruction." The court thereupon instructed the jury "The Court suggested it and the State went along with it with acquiescence of the defense attorney."
The jury returned a verdict against Mr. Flicker as to Count I and against both defendants as to Counts II and III.
Defendants appeal on several grounds some of which need not be considered by us.
First, as to Mrs. Flicker, we find upon an examination of the record on appeal (which consists of exactly 800 pages) that there is not one iota of evidence that she participated in any forgery or in the uttering or publishing of any forged public record.
The gist of Count III of the information is that the notarial attestation to-wit the signature "M.E. Beck" on the "Oyler satisfaction" was forged. The only evidence to support that charge is the testimony by Mrs. Beck that she had been requested by Mr. Flicker to notarize the document and that she did not do so and that the signature appearing thereon was not hers and was therefore a forgery. Mrs. Beck did not even testify that Mrs. Flicker asked her, or was aware that she had been asked to notarize the document. A colloquy between the State Attorney and the trial judge which appears in the record reflects that the State was relying upon circumstantial evidence and it was on that basis that the trial judge denied the motion for a directed verdict. Nothing would be added to the jurisprudence of this State were we to here reiterate the oft repeated law regarding the sufficiency of circumstantial evidence to sustain a conviction of a crime. Suffice to say, the evidence in the record in this case falls far short.
An essential element in the crime of uttering or publishing a forgery is knowledge by the defendant; and proof must be adduced, either direct or circumstantial, that the person charged knew that the instrument was a forgery. As stated by the Supreme Court of Florida as far back as 1920,
"In uttering a forged instrument the offense consists in the knowledge on the part of the defendant that the instrument is false, not genuine; not a true writing; * * * and an intent to injure or defraud another by asserting that the instrument is true. * * *" (Harrell v. State, S.C.Fla. 1920, 79 Fla. 220, 83 So. 922 at page 925.) (Emphasis added.)
The State seeks to bolster its case against Mrs. Flicker by reliance on this Court's decision in Jacobs v. State, 1 Fla. App. 1966, 184 So.2d 711. There this Court *112 held that if an information charges a defendant with the commission of a criminal offense and the proof establishes only that he or she was feloniously present, aiding and abetting in the commission of the crime, a verdict of guilty as charged should be sustained. While the writer of this opinion readily concedes disagreement with that holding, nevertheless even that case holds that in order for a conviction to be sustained the defendant, though not actually guilty of the substantive offense, must be shown beyond a reasonable doubt to have been guilty of being feloniously present, or aiding, abetting, counseling, hiring, or otherwise procuring the commission of the criminal offense. The record before us is devoid of any such as to Mrs. Flicker. A charge of a substantive crime of commission cannot be sustained by proof of omission.
As to Count II which charges that both Mr. and Mrs. Flicker uttered and published a false or forged public record, to-wit; the "Oyler satisfaction", the record is devoid of any evidence which would lead us to believe, or which could have legally led the jury to believe, that Mrs. Flicker uttered or published, or participated in the uttering or publishing, of any false or forged document. The sole evidence in that regard is that Mrs. Flicker accompanied her husband to the office of the Clerk of the Circuit Court and at his request printed the name and address of the person alleged to have prepared the instrument. The name, M.E. Pierce, followed by an address, appearing on the bottom of the instrument following the stamped words "This instrument prepared by:" adds nothing to the authenticity of the instrument and there is no evidence to suggest that Mrs. Flicker had any knowledge that the instrument was a forgery, if indeed it was.
As above recited, Counts I and II charged the crime of uttering and publishing forged public records to a specific person, to-wit; one Della Grove. It has been held that an information charging the uttering and publishing of a forged instrument should state the name of the person, firm, corporation or company who or upon whom the same was uttered or published, or else it should account for the omission by a statement that such person is unknown. (Goodson v. State, Sup.Ct.Fla. 1892, 29 Fla. 511, 10 So. 738) It goes without saying that if the information does in fact designate a specific person to whom the alleged forgery is uttered and published then that becomes a material part of the charge and proof of utterance or publication to another will not sustain the charge of uttering or publishing to the person named.
The specific public record alleged to have been false or forged is not identified in either count except as "Exhibit A" in Count I and "Exhibit B" in Count II. Although the record before us does not so reflect, we are led to the belief that the "Jenkins satisfaction" was attached to the information as Exhibit A (because the copy of that satisfaction which appears in the record bears the clerk's file mark of August 25, 1971) and the "Oyler satisfaction" was Exhibit B referred to in Count II (the copy of the latter which appears in the record bears the clerk's file mark of September 10, 1971). However, the record reveals that the jury, of necessity, had to rely upon pure speculation and conjecture in order to consider the documents which ultimately were received into evidence. At the commencement of the trial, as above stated, two instruments which were marked as State's Exhibits A and B for identification only, were identified by a deputy clerk Norman as being copies of two satisfactions of mortgage, one of which was submitted to him for recording by Mr. Flicker on August 25, 1971, and the second as having been submitted to him for recording by Mr. Flicker, in the presence of Mrs. Flicker, on September 10, 1971. Following Mr. Norman, deputy clerk Della Grove testified that Exhibits A and B for identification ultimately came to her from someone not identified in the Clerk's office for the assignment of a recording book and *113 page number; but she testified that she did not know either Mr. or Mrs. Flicker and had never seen either of them. They were not the person or persons who had transmitted the instruments to her for her clerical duties. At that point the record reveals that some confusion arose as to the instruments which had been exhibited to witnesses Norman and Grove as Exhibits A and B for identification; whereupon Exhibits A and B which were attached to the original information were removed therefrom and marked Exhibits C and D for identification and then received into evidence without ever having been identified by any of the witnesses as being the instruments, or copies of the instruments, which were submitted to the deputy clerk Norman for recording by the Flickers. In other words, the instruments which were identified by the witnesses were not the instruments which were received into evidence. While it is true that it was the evidentiary exhibits which were the subject of the testimony of various witnesses touching upon the authenticity thereof, it will be noted that Counts I and II of the information are not for forgery and do not charge either Mr. or Mrs. Flicker with forgery but rather with uttering and publishing a forged document to Della Groves. There simply is no evidence in the record that either of the documents received into evidence were uttered or published by the defendants to Della Grove, or indeed to anyone else.
Defendants also contend that the misrepresentation of the State's Attorney that he had voluntarily dismissed Count I of the information against Mrs. Flicker was so prejudicial as to poison the entire case. We agree. The record clearly reflects that the State Attorney vigorously defended against the defendants' motion for a directed verdict as to each defendant and as to each count. The court ultimately announced that a verdict of acquittal would be directed in favor of Mrs. Flicker as to Count I. The State Attorney's subsequent statement to the jury that he had determined that there was insufficient evidence to convict Mrs. Flicker as to Count I and that he had asked the court to dismiss that charge as to her certainly could have, and reasonably should have, implanted in the jurors' minds that if the State of its own volition was being so candid as to Count I then certainly it must have felt that there was adequate evidence to convict both defendants as to the other counts; and the statement in the record by the State Attorney that the defendants' attorney's statement was patently false could only have been prejudicial. The prejudice was then aggravated by the court's statement that the dismissal had been suggested by the court "and the State went along with it."
We recognize that it is well settled that counsel is accorded a wide latitude in making his argument to a jury. (Lovell v. Henry, Fla.App. (3d) 1968, 212 So.2d 67; Frazier v. State. Fla.App. (1st) 1974, 294 So.2d 691, opinion filed May 7, 1974) Whether the bounds of propriety in such regard have been exceeded, however, must be measured against the prejudicial effect, if any, that is likely to be had upon the jury. (Schnedl v. Rich, Fla.App. (2d) 1962, 137 So.2d 1) Jury arguments will not be considered grounds for mistrial unless they are highly prejudicial and inflammatory. (H.I. Holding Company v. Dade County, Fla.App. (3d) 1961, 129 So.2d 693) However, it is the total effect of the alleged improprieties that must be considered. (Scott v. State, Fla.App. (2d) 1962, 137 So.2d 625) When the improprieties revealed by the record are such as to cast an unfairly favorable light upon the State and an undeserved unfavorable light upon the defendant the prejudice is apparent and the entire trial is thereby tainted.
For the above reasons the conviction and sentence of Elizabeth Flicker as to both Counts II and III are reversed with directions that she be forthwith discharged. As to Arnold Flicker the judgment and sentence *114 as to each count are reversed and the case is remanded for a new trial.
McCORD, J., specially concurs.
DREW, E. HARRIS, Associate Judge (Retired), concurs in part and dissents in part.
McCORD, Judge (specially concurring).
I concur in Judge Boyer's opinion except that I do not agree with his statement of disagreement with the court's holding in Jacobs v. State, supra.
DREW, E. HARRIS, Associate Judge (Retired).
I agree that the evidence in this cause wholly fails to support the verdict and judgment against Elizabeth Flicker and for that reason I concur in the reversal as to her. I must, however, dissent from that portion of the decision reversing the judgment as to Arnold Flicker. I would affirm as to him.