DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL EDWARDS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-3965

[ June 13, 2018 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. 15-2476 CF10A.

Carey Haughwout, Public Defender, and Siobhan Helene Shea, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Michael Edwards appeals his conviction and sentence for aggravated battery. At trial, appellant maintained he was acting in self-defense during a fight with the alleged victim. Critical to his case was testimony by a detective implying that appellant's demeanor during a post-arrest interview indicated deception. We reverse appellant's conviction and remand for a new trial, because the trial court erred in allowing the detective to testify that, based on his training and experience in conducting interviews, certain body language and mannerisms indicate deception. Because appellant exhibited those same mannerisms during the interview, the detective's testimony amounted to an inadmissible opinion on credibility and invaded the province of the jury.

Briefly, the evidence at trial established that a fight arose between appellant and the alleged victim[1] one evening outside a convenience store

---

[1] For ease of reference, we will refer to this individual throughout the opinion as "the victim."

after the two exchanged words about money the victim claimed appellant owed him for a pair of boots.

Appellant punched the victim, and the two men started fighting. The surveillance video at the convenience store captured the beginning of the fight when appellant threw the first punch, but appellant and the victim disappeared from the camera's view soon thereafter.

The victim and appellant were "just going back and forth" for a while. According to the victim's testimony, appellant eventually pulled out a razor and started cutting him with it. At the time of the fight, the victim was carrying a little silver pocketknife. The victim testified that he was unable to use his knife because his hands were too bloody. The victim denied pulling his knife on appellant or cutting him.

The victim was badly cut on his face, head, neck, and arms. When he realized he was cut, he let appellant go, and appellant got on his bike and rode away.

A detective took a statement from the victim at the hospital. Because the victim claimed in his statement that he was unable to use his knife in the fight, the police never collected or examined the knife.

The detective later conducted a videotaped interrogation of appellant, which was played for the jury. During the interview, appellant mostly looked at the ground, buried his face in his hands, and avoided making eye contact.

The detective asked appellant what caused him to do what he did. Appellant responded by writing on paper, "He tried to kill with his knife." Appellant said the other man was drinking and tried to hurt him. Appellant claimed the man beat him up and cut him with a razor or a knife. Appellant said he could not remember too much after that.

Appellant described the man as "big" and said the man was in a group of three or four people. Appellant denied knowing the man. When the detective asked appellant if he got the knife away from the man, appellant replied that he grabbed the man's hand but could not remember if he got the knife away from him. Appellant repeated that the man cut him. Appellant did not call the police after the incident because "[t]hey don't want to help no bum." Appellant said he just wished that he had not been there.

2

Shortly before the interrogation was played for the jury, the detective testified that he had received special training in conducting interviews. Then, over repeated defense objections, the trial court permitted the state to elicit testimony from the detective regarding the mannerisms he looks for during interviews that would indicate whether the person is being truthful or deceptive. The detective testified that if someone is being honest and truthful, he will maintain eye contact during the conversation. He said, however, that if someone is being deceptive, he will avoid eye contact and look down. Other indicators of deception, according to the detective, are that the person may bury his face, cross his arms to create a barrier, conceal his mouth, or look away.

Defense counsel strongly objected to the detective's testimony on mannerisms, arguing that it was irrelevant and an improper comment on appellant's veracity. The trial court overruled defense counsel's objections, but precluded the state from offering the detective's ultimate opinion as to whether appellant was telling the truth. Defense counsel also moved for a mistrial, explaining: "Mr. Edwards, as you will see shortly, constantly looks at the ground, doesn't make eye contact. [The detective] just told the jury that he's deceptive based on his training and experience without saying, 'I believe he's deceptive.'" The trial court denied the motion for mistrial.

In both his opening statement and his closing argument, defense counsel suggested that the victim could have introduced the knife into the altercation and that appellant's use of deadly force was justified.

During deliberations, the jury requested to see the last two minutes of appellant's police interview, which the trial court permitted the jury to view.

The jury found appellant guilty of the lesser included offense of aggravated battery, and made a specific finding that appellant actually carried, possessed, or displayed a weapon. The trial court sentenced appellant to 30 years in prison as a habitual violent career criminal. This appeal ensued.

On appeal, appellant argues that the trial court erred in overruling his objection to the detective's testimony regarding mannerisms indicative of deception. Appellant contends that the detective's "experience with other people's mannerisms in interviews in other cases was not relevant." Moreover, appellant asserts that the detective's testimony was, in essence, an improper opinion on appellant's credibility.

3

The state responds that the trial court properly admitted the detective's opinion. The state argues that the detective was qualified to give either a lay opinion or an expert opinion as to how an individual exhibits deception. The state also points out that the detective never gave an ultimate opinion as to whether appellant was telling the truth during the interview. Finally, the state argues that any error was harmless, emphasizing that the jury was given an instruction on weighing the testimony of witnesses, that the evidence was "overwhelming," and that the prosecutor did not rely on the detective's body language testimony in closing argument.

"A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review, but the court's discretion is limited by the rules of evidence and the applicable case law." *Horwitz v. State*, 189 So. 3d 800, 802 (Fla. 4th DCA 2015).

"Generally, a witness' opinion as to the credibility, guilt, or innocence of the accused is inadmissible." *Jackson v. State*, 107 So. 3d 328, 339 (Fla. 2012). Likewise, "[i]t is well established that police officers cannot give their opinions as to the truthfulness of a defendant." *Shannon v. State*, 753 So. 2d 148, 149 (Fla. 3d DCA 2000). For example, it is improper for a police officer to testify that, on the basis of his training and experience, he was able to tell that the defendant was untruthful during an interrogation. *Id.* at 149–50.

It is also improper for a prosecutor to advise the jury to apply an officer's lay testimony on the topic of body language in evaluating the defendant's credibility. *See Miller v. State*, 782 So. 2d 426 (Fla. 2d DCA 2001). In *Miller*, the prosecutor asked an officer if he had any training in determining whether a person was being truthful or deceitful based on the person's body language. *Id.* at 431. Over defense objection, "the officer explained how one could distinguish truth from falsehood by watching the movement of the speaker's eyes." *Id.* Although the officer was not presented by the state as an expert, the trial court "allowed this testimony as part of the officer's 'qualifications.'" *Id.*

In *Miller,* the prosecutor implied during closing argument that the officer had provided expert testimony on body language, and suggested that the jury should apply the officer's testimony in evaluating the defendant's credibility in a videotaped interrogation:

> You heard Deputy Bradish tell you he has had specific training in body language regarding interrogation techniques. You look at where [the defendant's] eyes go. Stop the video

4

and look at it. Where do his eyes go when he's asked about his knowledge of that sign.

782 So. 2d at 431.

The Second District held that this argument was improper, reasoning:

> The officer had not been qualified by the trial court as an expert, and lay witnesses may not normally testify in terms of inferences or opinions. In closing, not only did the prosecutor imply that the deputy's testimony amounted to expert testimony, she advised the jury to apply the officer's "expertise" in evaluating [the defendant's] credibility.

*Id.* (citation omitted).

Several courts outside of Florida have found that officers may not testify as to their interpretation of body language to determine whether a person was being truthful, as such testimony invades the province of the jury. *See State v. Barr*, 98 P.3d 518, 521–23 (Wash. Ct. App. 2004) (an officer's testimony regarding his observations of the defendant's statements and body language during an interrogation, as informed by the officer's training to look for verbal and nonverbal clues that a person was being deceptive, invaded the province of the jury by impermissibly commenting on the defendant's guilt); *State v. Reimer*, 941 P.2d 912, 913–14 (Ariz. App. 1997) (whether considered as expert or lay opinion, an officer's testimony as to the credibility of the victim's out-of-court statement was not admissible, despite the officer's training and experience in interpreting body language to distinguish people who are telling the truth from people who are lying, because "courts have expressly determined that neither expert nor lay witnesses assist the trier of fact to understand the evidence or to determine a fact in issue when they merely opine on the truthfulness of a statement by another witness"); *United States v. Farrar*, 25 M.J. 856, 858 (A.F.C.M.R. 1988) ("[T]he interpretation of body language by a witness cannot be offered as expert testimony on 'truth telling.' "); *United States v. Wagner*, 20 M.J. 758, 761 (A.F.C.M.R. 1985) (holding that the trial court erred in admitting an officer's expert testimony that the defendant was telling the truth when he confessed, because "[t]he rule remains that, absent unusual circumstances, opinion testimony on whether or not to believe a particular witness' testimony simply is not deemed helpful to the factfinder, for the factfinders are perfectly capable of observing and assessing a witness' credibility"); *United States v. Clark*, 12 M.J. 978, 979 (A.F.C.M.R. 1982) ("While interpretation of 'body language' may be a valid interviewing technique, it has no place in the courtroom.").

5

Here, the trial court abused its discretion in allowing the detective to testify about body language and mannerisms that indicated deception. This testimony constituted an inadmissible opinion on credibility, thereby invading the province of the jury. This case fits squarely within the rule that opinion evidence on the truthfulness of a defendant is inadmissible.

A jury ordinarily needs no assistance in deciding whether a particular witness or defendant is to be believed. While the detective did not express an ultimate opinion as to whether appellant was being truthful during the interrogation, the detective's testimony was clearly calculated to imply that appellant's body language showed he was being deceptive. The detective testified as to mannerisms that he claimed were indicative of deception, including avoiding eye contact, looking down, and burying one's face in one's hands. Immediately thereafter, the jury saw an interrogation video in which appellant exhibited those exact mannerisms. Thus, the effect of the detective's testimony was to offer a back door opinion as to appellant's credibility.

Whether characterized as lay opinion or expert opinion,[2] the detective's testimony concerning body language was irrelevant and improperly invaded the province of the jury. Therefore, we find that the trial court should have excluded the detective's testimony concerning body language indicative of deception.

The error was not harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986). In arguing that the error was harmless, the state maintains that the evidence against appellant was "overwhelming." However, this is not the correct test. *See Ventura v. State*, 29 So. 3d 1086, 1089 (Fla. 2010). Instead, the question is whether there is no reasonable possibility that the error contributed to the conviction. *DiGuilio*, 491 So. 2d at 1135.

Here, appellant's theory of defense was that his use of deadly force was justified. Appellant's defense thus depended on his claim in the interrogation that the victim cut him with a knife and tried to kill him. Although the video of the incident supports the state's theory that appellant was the initial aggressor of the fight, the video does not show the entire fight and does not refute appellant's claim that the victim attempted to cut him. The detective's opinion on body language severely damaged

---

[2] As in *Miller*, the detective in this case was not formally offered as an expert at trial. However, we find it unnecessary to decide whether his testimony on body language constituted expert testimony or lay testimony.

appellant's credibility, even if the prosecutor did not rely upon this testimony in closing argument.

Moreover, the fact that the jury was given a standard instruction on weighing the testimony of witnesses does not render the error harmless, as the detective's testimony still might have affected the jury's determination of appellant's veracity. The standard instruction on weighing the evidence, which is primarily focused on factors the jury should consider in weighing live testimony, would not have cured the improper opinion testimony implying that appellant was being deceptive in his interrogation.

Accordingly, we reverse appellant's conviction and sentence and remand this cause for a new trial. Given this disposition, we need not decide appellant's second issue regarding the state's comments on its burden of proof.

*Reversed and Remanded.*

MAY and KUNTZ, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***